**AU BON PAIN CORPORATION,
Plaintiff-Appellant,**

v.

**ARTECT, INC., Douglas Kahn and Max
Gordon, Defendants-Appellees.**

**No. 1228 Docket No. 81–7066.**

United States Court of Appeals,
Second Circuit.

Argued April 22, 1981.
Decided June 22, 1981.

---

Michael E. Schoeman, New York City (Schoeman, Marsh, Updike & Welt, New York City, Beth L. Kaufman, New York City, of counsel), for plaintiff-appellant.

Michael D. Brookman, New York City (Brookman & Brookman, New York City, of counsel), for defendants-appellees.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiff Au Bon Pain Corporation (ABP) appeals from an order of judgment entered after trial, in the Southern District of New York, Brieant, J., dismissing its complaint against defendants Artect, Inc., Douglas Kahn and Max Gordon. In an earlier order,

the district court had severed the claims against Artect, thus leaving ABP to proceed against the individual defendants, both officers of Artect. The district court held at trial that ABP had failed to prove its case against either individual and dismissed ABP's complaint in its entirety. We now reverse.

## I.

According to the allegations in its complaint and the proof offered at trial, ABP, a Delaware corporation with its principal place of business in Boston, Massachusetts, operates a chain of retail bake shops. It hired Gordon Kahn Associate Architects to design three bake shops, two in Michigan— one at the Lakeside Mall in Sterling Heights and one at the Fairlane Town Center in Dearborn—and one in Boston. Douglas Kahn and Max Gordon were the partners of Gordon Kahn Associate Architects. Artect, Inc. of which Kahn was the president and Gordon was the vice-president was the general contractor on all three projects.

Pursuant to the standard contracts for each project, progress payments were to be made to Artect by ABP based upon standard Applications and Certificates for Payment submitted by Artect. These documents contain a summary of the work completed to date by each subcontractor, the goods and materials stored at the site, and the payments then due to each subcontractor. They also contain a certification that states:

> The undersigned Contractor certifies that the Work covered by this Application for Payment has been completed in accordance with the contract Documents, *that all amounts have been paid by him for Work for which previous Certificates for Payment were issued and payments received from the Owner*, and that the current payment shown herein is now due. (Emphasis added).

Thus, the certification makes clear that the Contractor certifies that prior advances have been disbursed to subcontractors as provided in the summaries set out in prior Applications and Certificates for Payment.

According to ABP, however, despite advances to Artect totaling at least $171,114 based upon such Applications, ABP was notified by various subcontractors, materialmen, suppliers and laborers that they had not been paid by Artect. ABP terminated all three projects in the winter of 1979–80. It was compelled to make additional payments to the various workers, over and above the funds advanced to Artect.

ABP then brought this diversity suit in the Southern District against Artect, Kahn, and Gordon. The complaint had five counts. The first three claimed a breach of contract by Artect as to each of the three projects and sought resulting losses. The fourth count charged all three defendants with fraud in connection with the Lakeside project and sought damages based upon money advanced by ABP, in reliance upon defendants' misrepresentations, which was never received by the various subcontractors, laborers, suppliers and middlemen, plus punitive damages. Finally, in the fifth count, ABP demanded an accounting by all defendants of the money advanced on all three projects and damages in the amount of the advanced funds which were not properly disbursed.

On June 25, 1980, the district court ordered that, because of an arbitration clause in the standard construction contract, the claims against Artect had to be submitted to arbitration. The court also held, however, that if the individual defendants committed a fraud or other tort while acting for the corporation, they could be sued individually. Therefore, the court ordered the arbitration claims stayed and severed from the claims against the individual defendants. Those latter claims were to go to trial.

Defendant Kahn failed to appear at a court-ordered deposition on July 30, 1980. He called the Magistrate responsible for pre-trial discovery and claimed he had discharged his lawyer (the firm which until then had represented all defendants) by letter dated July 29, and was having difficulty securing new counsel. At pre-trial conference on September 5, Kahn, now appearing

*pro se,* informed the district judge that he could be reached regarding the litigation through his brother whose address and phone number he gave to the judge. In a letter dated September 18, Kahn responded to ABP's interrogatories in an evasive and unresponsive manner. In a second attached letter, dated September 19, Kahn informed the district judge that he would not be able to attend the trial—then scheduled for November 15—because he was looking for work; he stated that his absence "should not be mistaken for default," and that "Mr. Gordon's defense should more than adequately present my case." Trial was rescheduled for December 15, and a subpoena so informing Kahn was left at his brother's address; ABP also sent a telegram giving the date of trial.

On December 15, Kahn did not appear for trial. His brother was present and stated that he had not heard from Kahn who was "traveling through the country, photographing." In the meantime, ABP and Gordon had reached a settlement, according to which Gordon would pay ABP $8,500, ABP would drop its charges against Gordon filed with the New York State Department of Education (the state body which licenses architects), and any judgment rendered to ABP in the suit would be joint and several against Gordon and Kahn for $8,500 and only against Kahn for any larger amounts awarded.

At the trial, after noting Kahn's failure to appear, and after striking a portion of the settlement respecting entry of a confession of judgment in state court, the district court asked ABP how it wished to proceed. ABP replied that it would like to take an inquest to obtain a judgment against Kahn. The court allowed ABP to proceed with its inquest; the court also dismissed the claims against Artect, Inc. without prejudice to arbitration, although ABP stated its belief that Artect was not solvent.

ABP then attempted to prove its inquest as to Kahn. Its theory of the case was that, under Michigan law, which it believed governed the obligations of the defendants with respect to the Lakeside and Fairlane project, funds paid to a contractor are considered a trust fund for the benefit of the builder, subcontractors, laborers and materialmen. Mich.Comp.Laws § 570.151 (1970). The contractor is considered the trustee of the fund. *Id.* Therefore, ABP alleged that Artect, by falsely certifying payment of ABP's money to the various subcontractors and others, while actually keeping the funds, breached its fiduciary duties. Moreover, as officers of the corporation who participated in the breach, Kahn and Gordon were also liable for the breach as individuals.

At the inquest, Louis Rapuano, president of ABP, identified the various contracts with Artect and the various certifications, signed by Kahn, of payments at both Fairlane and Lakeside. Beginning with the Lakeside project, he also testified to the amounts ABP advanced to those who had not been paid, despite certifications to the contrary. The court asked for a recess for Rapuano and counsel to total the amounts falsely certified and for which ABP later made payment on the Lakeside project. The total was $37,532.02. This figure, in fact, was in error since the column of figures stating the damages was added incorrectly during the recess. The correct total was $43,402.02.

When counsel then attempted to put forward proof of damages on the Fairlane project, he was stopped by the district court. The court stated that because the Fairlane project was not mentioned in the fourth count of the complaint, but in the fifth which asked for an accounting, any damages on that project were to be left to arbitration. No amendment of the pleadings was allowed.

The district court then began making findings on the record. When it stated that ABP had proved false certification by the architectural partnership, ABP's counsel interrupted and said that the partnership was not involved in the dispute, and stated its theory of the case as to a breach of trust by the contractor and hence liability of its officers. The court, apparently believing this theory was invalid, stated that ABP had

failed to prove a *prima facie* case against Kahn.

Gordon was then allowed to testify. He testified that the certifications were made as architects. Gordon's attorney stated that the stipulation of settlement was contingent upon entry of judgment against Kahn and Gordon and so, if no judgment was obtained, the stipulation should be withdrawn. The court agreed.

The court gave ABP one last chance to convince it there was a valid method of recovery against Kahn. Apparently believing there might be a case for common law fraud, the court asked if there was proof enough to sustain a fraud claim. Specifically, the court was concerned whether there was evidence that the false certifications were more than negligent or mistaken. ABP gave an offer of proof as to a witness, John Mears, then in Boston who could testify that when Kahn certified that certain subcontractors had been paid, no such payments had been made, and Kahn knew so. The court asked how counsel knew what Mears would testify and counsel replied from conversations, although no notes of those conversations existed. Believing there was no proof of fraudulent intent, the court thereupon dismissed the suit against all defendants.

## II.

■ We agree that Kahn's actions—failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial—were sufficient to support a finding that he had "failed to plead or otherwise defend" under Federal Rule of Civil Procedure 55. As to the inquest, however, we believe the district court committed a number of errors, thus requiring reversal.

■ First, at the inquest, the court should have accepted as true all of the factual allegations of the complaint, except those relating to damages. *See, e. g., Geddes v. United Financial Corp.*, 559 F.2d 557 (9th Cir. 1977); *Trans World Airlines, Inc. v. Hughes*, 308 F.Supp. 679 (S.D.N.Y. 1969), *aff'd*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). 10 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2688, at 280, 284 (1973). ABP was also entitled to all reasonable inferences from the evidence offered. *Trans World Airlines, Inc. v. Hughes, supra*, 308 F.Supp. at 683. Although a district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action, *see* C. Wright & A. Miller, *supra* § 2688, at 280–81, 282, we believe ABP offered ample proof as to Kahn of both a breach of fiduciary duty under Michigan statutory law and common law fraud.[1] The first theory was rejected since the district court for some reason thought ABP could only proceed against Kahn as an architect. The certifications introduced into evidence, however, were all signed by Artect, Inc., the contractor, with Kahn's signature, and all included a certification, quoted above, that *the contractor* certified that prior payments had been made. Therefore Kahn would be liable as officer of the contractor. Even under the fraud theory, the court erred in rejecting an offer of proof as to fraudulent intent which was to be given by a witness who, according to the record, the district court had previously agreed could remain in Boston and for whom an offer of proof would be sufficient.

■ It was also error not to allow proof as to the Fairlane project. While ABP mentioned only the Parkside project in its fourth count, the fifth count alleged improper conversion of funds on both Lakeside and Fairlane projects. Apparently, ABP had asked only for an accounting as to Fairlane due to lack of knowledge as to

1. There is some question whether Michigan or New York law controls this action, although the district court made no reference to this question and neither party raises it on appeal. It is, however, unnecessary to decide the issue since we believe ABP could recover either under Mich.Comp.Laws § 570.151 or under either state's common law of fraud.

exact damages. Discovery, however, informed ABP as to that amount. We believe the complaint was sufficient to apprise all defendants that damages were sought as to the Fairlane project as well, and it was error for the district court not to allow the pleadings to be amended in light of subsequent proof.

■ Finally, it was error not to approve the stipulation of settlement as to Gordon. Although the court believed the settlement to be conditioned upon entry of judgment against Kahn, in fact the stipulation makes plain that Gordon was to pay $8,500, ABP would drop charges as to Gordon's license, and, *if* a judgment was obtained in this action, Gordon would only be jointly and severally liable with Kahn for $8,500. Thus, even if no judgment against Kahn was entered, Gordon was still to pay the $8,500.

On remand, ABP should apply to the clerk to enter default against Kahn. Fed. R.Civ.Proc. 55(a). It should then apply to the court to enter default judgment against Kahn. Because Kahn has appeared in the action, both when represented by counsel and *pro se* at the pre-trial conference, Rule 55(b)(2) requires that he be given three days' notice of hearings on the application for default judgment. At those hearings, if no legitimate excuse for Kahn's absence appears, the court should proceed to an inquest solely as to damages. At the inquest, ABP should be allowed to submit any evidence of damages relating to its claims, both as to Parkside and Fairlane projects. The stipulation of settlement with Gordon should be approved and given effect.