OPINION OF THE COURT
 

 Chief Judge Wachtler.
 

 The plaintiff contracted to sell a house to the defendants and accepted a check for the down payment. When the defendants canceled the contract and stopped payment on the check, the plaintiff sued for a breach claiming a right to the down payment — a right traditionally allowed in this State under the rule set forth in
 
 Lawrence v Miller
 
 (86 NY 131). The trial court denied plaintiff’s motion for summary judgment holding that a fact question was presented as to whether recovery of the down payment would constitute a penalty under the circumstances. The Appellate Division modified and granted summary judgment to the plaintiff for the amount of the down payment.
 

 The defendants appealed claiming there was no breach because they effectively exercised a contractual right to cancel. In the alternative, defendants urge that plaintiff’s recov
 
 *376
 
 cry should be limited to actual damages, and that we should, therefore, reexamine the rule of
 
 Lawrence v Miller (supra),
 
 which permits a vendor on a real estate contract to retain the down payment when the purchaser willfully defaults.
 

 I.
 

 In 1983 the defendants contracted to purchase a newly constructed house from the plaintiff for $210,000. At the contract signing on August 3, the defendants gave the plaintiff a check for $21,000 as a down payment to be held in escrow. A handwritten rider, included in the contract at the defendants’ request, provided: "If real estate taxes are in excess of $3,500 based on a full assessment of house sold for $210,000.00, buyer shall have the right to cancel this contract upon written notice to the seller within three days of date and escrow funds to be returned.”
 

 The following day defendant Cynthia Lo Galbo and plaintiff’s president, Scott Seeman, went to the county tax assessor’s office to obtain an estimate of the taxes on the new house. The assessment was in excess of $3,500.
 

 The defendants’ attorney then called the plaintiff’s counsel and informed him that the defendants had decided to exercise their option to cancel. He also sent a certified letter to the defendants’ attorney informing him in writing of the defendants’ decision to cancel. The letter was mailed on Friday August 5 and was received by plaintiff’s attorney on August 9. Several days later plaintiff’s attorney also received a bank notice that defendants had stopped payment on their check.
 

 On September 20, 1983, the plaintiff commenced this action against the defendants to recover the amount of the down payment claiming that the defendants breached the contract when they stopped payment on the check. In their answer the defendants contended that they had properly exercised their right to cancel in accordance with the rider. On December 20, 1983, the plaintiff sold the house to another purchaser for the same amount the defendants had agreed to pay. However this sale, unlike the contract with the defendants, was arranged by a real estate broker who charged the plaintiff a fee of $12,000 for finding the new purchaser.
 

 Both sides subsequently moved for summary judgment on
 
 *377
 
 the complaint,
 
 [1]
 
 the defendants asserting their right to cancel, and the plaintiff claiming the cancellation was ineffective because it was not made in the time or manner prescribed by the contract. Relying on
 
 Lawrence v Miller
 
 (86 NY 131,
 
 supra),
 
 the plaintiff urged that the defendants had lost the right to the down payment by defaulting on the contract. Plaintiff also alleged that although it was not seeking actual damages, it had suffered real financial losses in excess of the down payment. Plaintiff contended that as a result of the defendants’ breach, it had incurred additional carrying charges for mortgage, interest, taxes and insurance, as well as other losses including the $12,000 fee paid to the real estate broker for bringing about the second contract.
 

 Special Term found that the defendants’ cancellation was ineffective primarily because it had not been received by the plaintiff within the three-day period stated in the contract. However, on the damages issue the court denied the plaintiff summary judgment concluding that the "substantial amount of the deposit, namely, $12,000, coupled with the fact that plaintiff was successful in selling the subject premises to another purchaser, albeit with the incurring of certain losses, creates a question of fact as to whether plaintiff’s claim to the deposit constitutes the seeking of a penalty”.
 

 The Appellate Division modified and granted summary judgment to the plaintiff for the amount of the down payment. The court agreed with Special Term that there had been a breach but stated: "Where there is a willful default by the vendee or a repudiation of the contract of purchase upon which a down payment has been made, it is settled in this State that the vendee may not recover his down payment even though the vendor resells the premises for a sum equal to or greater than the contract price”. (113 AD2d 923, 924.)
 

 On this appeal the defendants again urge that their refusal to perform did not constitute a breach because they had reserved and adequately exercised a right to terminate. Although the plaintiff did not receive written notice of termination within three days, as the contract required, the defendants contend that this is not fatal when, as here, the contract does not provide that time is of the essence. The defendants argue that under these circumstances all that is required is
 
 *378
 
 reasonable notice and that this requirement was met here when the defendants mailed the notice and gave the plaintiffs attorney actual oral notice within the three-day period. It is settled, however, that when a contract requires that written notice be given within a specified time, the notice is ineffective unless the writing is actually received within the time prescribed
 
 (see, Peabody v Satterlee,
 
 166 NY 174;
 
 Kantrowitz v Dairymen’s League Co-op. Assn.,
 
 272 App Div 470,
 
 affd
 
 297 NY 991;
 
 cf. Sy Jack Realty Co. v Pergament Syosset Corp.,
 
 27 NY2d 449). In short, the defendants bargained for and obtained a limited right to cancel which they failed to exercise within the time agreed upon. The cancellation was, therefore, ineffective and the defendants’ refusal to perform constituted a breach
 
 (Morgan & Brother Manhattan Stor. Co. v Balin,
 
 39 NY2d 848).
 

 The defendants’ alternative argument is that the Appellate Division erred in permitting the plaintiff to recover the entire down payment, and should instead have limited recovery to actual damages. On the basis of existing law it is clear that the defendants cannot prevail. For more than a century it has been well settled in this State that a vendee who defaults on a real estate contract without lawful excuse, cannot recover the down payment
 
 (Lawrence v Miller, supra; Steinhardt v Baker,
 
 163 NY 410;
 
 Cohen v Kranz,
 
 12 NY2d 242;
 
 32 Beechwood Corp. v Fisher,
 
 19 NY2d 1008;
 
 Sommer v General Bronze Corp.,
 
 21 NY2d 775;
 
 Laba v Carey,
 
 29 NY2d 302;
 
 Morgan & Brother Manhattan Stor. Co. v Balin,
 
 39 NY2d 848,
 
 supra; Willard v Mercer,
 
 58 NY2d 840; 62 NY Jur, Vendor and Purchaser, § 137). The rule, however, has been criticized as being out of harmony with the general principle that actual damages is the proper measure of recovery for a breach of contract and, it has been abandoned by several jurisdictions
 
 (Freedman v Rector, Warden & Vestrymen,
 
 37 Cal 2d 16, 230 P2d 629; Perillo,
 
 Restitution in the Second Restatement of Contracts,
 
 81 Colum L Rev 37, 50; Friedman, Contracts and Conveyances of Real Property, at 931 [4th ed]). The defendants’ argument on this appeal presents the question as to whether the longstanding rule should be retained in this State.
 

 II.
 

 In the leading case,
 
 Lawrence v Miller
 
 (86 NY 131,
 
 supra),
 
 decided by this court in 1881, we denied the assignee of the defaulting vendee recovery of a $2,000 down payment, reason
 
 *379
 
 ing that the vendor acquired the money rightfully, failed in no duty to the vendee, and the money would have been his but for the vendee’s breach. We stated (at p 140): "To allow a recovery of this money would be to sustain an action by a party on his own breach of his own contract, which the law does not allow * * * Nor can the specious view be taken, presented by the plaintiff, that the defendant is entitled to no more than he has actually been damaged.”
 

 Much of the criticism of
 
 Lawrence v Miller (supra)
 
 is directed at the rule on which it is based, which broadly holds that a party who defaults on a contract cannot recover the amount or value of part performance (Corbin,
 
 Right of a Defaulting Vendee to the Restitution of Installments Paid,
 
 40 Yale LJ 1013; 1942 Report of NY Law Rev Commn, at 179). This parent rule is applicable to contracts generally, and has been applied to a wide variety of circumstances including the sale of goods, employment contracts for a fixed term, construction contracts, and installment land sales (Corbin,
 
 op. cit).
 
 In all of these cases the common law would deny any relief to the defaulting party even when there had been substantial, or nearly complete performance. It was these holdings especially which prompted the criticism calling for reform of the parent rule on the ground that it produced a forfeiture "and the amount of the forfeiture increases as performance proceeds, so that the penalty grows larger as the breach grows smaller.” (Corbin,
 
 ibid.,
 
 at 1029;
 
 also see,
 
 Act, Recommendation and Study Relating to Installment Land Contracts, 1937 Report of NY Law Rev Commn, at 343; Act and Recommendation Relating to Installment Land Contracts, 1938 Report of NY Law Rev Commn, at 47; Act, Recommendation and Study Relating to Recovery for Benefits Conferred by Party in Default Under Contract, 1942 Report of NY Law Rev Commn, at 179; Act, Recommendation and Study Relating to Right of Buyer of Goods to Restitution for Benefits Conferred Under a Contract of Sale on Which He Has Defaulted, 1952 Report of NY Law Rev Commn, at 83.)
 

 The "modern rule” advocated by the critics permits the party in default to recover for part performance in excess of actual damages, but places the burden on him to prove the net benefit conferred
 
 (see,
 
 Perillo,
 
 op. cit,
 
 at 49-50; Corbin,
 
 op. cit.,
 
 at 1023-1024; Restatement [Second] of Contracts § 374; Friedman,
 
 op. cit.,
 
 at 931). The rule was designed primarily to protect the party who had made a number of payments or substantial performance before default, and provides little
 
 *380
 
 relief to the defaulting purchaser seeking to recover a down payment or first installment. Corbin notes: "In such cases, it is unlikely that the amount retained by the vendor was greater than the injury suffered by the plaintiff’s breach. Whatever the amount, the plaintiff must show that it is greater than the injury done. In most cases that injury is wholly unliquidated and difficult of accurate estimation; and in few cases does the plaintiff attempt to show how much it was.” (Corbin,
 
 op. cit.,
 
 at 1024-1025.)
 

 The Restatement (Second) of Contracts adopts the "modern rule”, but recognizes an exception for liquidated damages, and also for "money paid” under an understanding or "usage” that it be retained in the event of a breach (§ 374 comment c). The illustration involves the right of a seller on a real estate contract to retain the first installment equal to 10% of the contract price, upon the buyer’s default.
 

 In 1834 New Hampshire became the first State to reject the parent rule and permit a defaulting party to recover for part performance in a case involving a laborer who had defaulted on a one-year employment contract after working for nine and one-half months
 
 (Brittan v Turner,
 
 6 NH 481). In most areas of the law the Legislature and the courts, have now adopted rules generally permitting a party in default to recover for part performance to the extent of the net benefit conferred
 
 (see, e.g.,
 
 Williston, Contracts § 1473;
 
 Amtorg Trading Corp. v Miehle Print. Press & Mfg. Co.,
 
 206 F2d 103 [summarizing New York law];
 
 Jacob & Youngs v Kent,
 
 230 NY 239 [permitting contractor to recover for substantial performance]; UCC 2-718; Act, Recommendation and Study Relating to Recovery for Benefits Conferred by Party in Default Under Contract, 1942 Report of NY Law Rev Commn, at 179;
 
 but also see,
 
 Comment,
 
 Forfeiture: The Anomaly of the Land Sale Contract,
 
 41 Alb L Rev 71). However in cases dealing with recovery of down payments on real estate contracts, a majority of jurisdictions still follow the principle of
 
 Lawrence v Miller (supra),
 
 especially where the down payment does not exceed 10% of the contract price
 
 (see, Modern Status of Defaulting Vendee’s Right to Recover Contractual Payments Withheld by Vendor as Forfeited,
 
 Ann., 4 ALR4th 993; Friedman,
 
 op. cit,
 
 at 928; 77 Am Jur 2d, Vendor and Purchaser, § 499).
 

 Several years ago the Law Revision Commission proposed that the Legislature of this State abrogate
 
 Lawrence v Miller (supra),
 
 and adopt a "more equitable” rule (Act, Recommenda
 
 *381
 
 tian and Study Relating to Recovery for Benefits Conferred by Party in Default Under Contract, 1942 Report of NY Law Rev Commn, at 179, 188, 237-239). The proposed law was not adopted. It is interesting to note, however, that although the proposed reform would generally have permitted the defaulting buyer to recover the net benefit conferred, it would also have allowed the seller, in any event, to retain "twenty percent of the value of the total performance for which the buyer is obligated under the contract”
 
 (ibid.,
 
 at 183).
 
 [2]
 
 A similar proposal was later made, and adopted by the Legislature, with respect to the right of a buyer to recover for part performance after defaulting on a contract for the sale of goods (Act, Recommendation and Study Relating to Right of Buyer of Goods to Restitution for Benefits Conferred Under a Contract of Sale on Which He Has Defaulted, 1952 Report of NY Law Rev Commn, at 83, 643; Personal Property Law former § 145-a, now UCC 2-718 [2] [permitting seller to withhold 20% of the value of the total performance up to a limit of $500]).
 

 III.
 

 We have previously noted that a court should not depart from its prior holdings "unless impelled by
 
 'the most cogent reasons’ ” (Baker v Lorillard,
 
 4 NY 257, 261). This standard is particularly apt in cases involving the legal effect of contractual relations. In fact, when contractual rights are at issue, "where it can reasonably be assumed that settled rules are necessary and necessarily relied upon, stability and adherence to precedent are generally more important than a better or even a 'correct’ rule of law”
 
 (Matter of Eckart,
 
 39 NY2d 493, 500). The rule permitting a party in default to seek restitution for part performance has much to commend it in its general applications. But as applied to real estate down payments approximating 10% it does not appear to offer a better or more workable rule than the long-established "usage” in this
 
 *382
 
 State with respect to the seller’s right to retain a down payment upon default.
 
 [3]
 

 In cases, as here, where the property is sold to another after the breach, the buyer’s ability to recover the down payment would depend initially on whether the agreement expressly provides that the seller could retain it upon default. If it did, the provision would probably be upheld as a valid liquidated damages clause in view of the recognized difficulty of estimating actual damages and the general acceptance of the traditional 10% down payment as a reasonable amount.
 

 If the contract itself is deemed to pose no bar, then the buyer would bear the burden of proving that the amount retained exceeded the actual damages. As the authorities note, this is a difficult burden in any case involving real estate sales, and is not likely to be met in suits on down payments or first installments where the actual damages will generally be very close to the amount of the traditional 10% retained. Thus, in most cases, a change in the law will provide a forum for the disputants to further dispute their differences, but cannot be reasonably expected to save any party from true financial loss. Indeed in the case now before us the defendants made no effort to show that the actual damages were less than the plaintiff alleged or that there was, in fact, a net benefit conferred.
 

 Finally, real estate contracts are probably the best examples of arm’s length transactions. Except in cases where there is a real risk of overreaching, there should be no need for the courts to relieve the parties of the consequences of their contract. If the parties are dissatisfied with the rule of
 
 Lawrence v Miller (supra),
 
 the time to say so is at the bargaining table.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Judges Meyer, Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . The parties also moved for summary judgment on a cross complaint brought by the defendants. Special Term granted Maxton’s motion to dismiss the cross complaint and that determination is no longer in issue.
 

 [2]
 

 . On this point, the report states (at p 188): "While it may be argued that the defaulting buyer should be allowed complete restitution for the benefit conferred, the Commission recognizes the practical difficulties which would result from the adoption of such a principle. Because of the difficulty of establishing the damages in many cases or because provable injury is sometimes not included within the rules of damages, and because a rule permitting complete restitution would encourage the breaking of contracts, the seller should be allowed to retain in any event a reasonable part of the net benefit conferred.”
 

 [3]
 

 . It should be emphasized that we do not have before us any question concerning installment payments beyond a 10% down payment and thus we express no view concerning the parties’ rights with respect to such payments following the vendee’s default.