■ WILLIAM A. FINKELSTEIN et al., Respondents, v MEL TAINITER et al., Appellants. [695 NYS2d 336] —Judgment, Supreme Court, New York County (Diane Lebedeff, J.), entered April 7, 1998, which denied defendants' motion to release plaintiffs' escrow deposit to them and granted plaintiffs' cross-motion for summary judgment for return of their down payment held in escrow, modified, on the law, to deny plaintiffs' cross-motion for summary judgment, and otherwise affirmed, without costs.

On the record before us, issues of fact are present concerning

whether, at the time of the signing of the contract in question, there was "a proposed Assessment * * * under consideration by the Board of Directors". The degree to which the "proposal" for an assessment had ripened at the time of the execution of the contract cannot be resolved as a matter of law simply by reference to the contract itself (*Time Warner Entertainment Co. v Brustowsky*, 221 AD2d 268). It is not insignificant that the defendant-appellant seller of the apartment was a member of the Board of Directors of the cooperative corporation and a real estate broker. Concur—Ellerin, P. J., Rosenberger and Tom, JJ.

Wallach and Saxe, JJ., dissent in a memorandum by Saxe, J., as follows: This dispute, arising out of a contract of sale for a cooperative apartment in a building on Manhattan's Upper East Side, requires the Court to construe the words "proposed Assessment which has been either adopted or is under consideration by the Board of Directors."

Having viewed the unit on prior occasions, plaintiffs then met with defendant Janice Tainiter, one of the co-owners of the unit, on January 17, 1996. During their conversations, defendant disclosed that she was a member of the cooperative's Board of Directors. Also discussed during the conversation was plaintiffs' observation that a piece of the building's facade above the garage was missing. According to plaintiff, defendant represented that the Board had discussed the facade problem and that corrective action had already been scheduled. She allegedly described the corrective action as "patchwork" and represented that the cost of the work would be financed by the reserve fund or an assessment on current cooperative shareholders, either of which would mean that in the event plaintiffs purchased the unit they would not incur any additional costs for the scheduled work.

In accordance with the parties' discussions and negotiations, they entered into a standard form contract of sale on February 9, 1996 that included a provision (paragraph 4.1.6) containing the representation that as of this date, "Seller neither has actual knowledge nor has received any written notice of (a) any increase in Maintenance or (b) any proposed Assessment which has been either adopted or is under consideration by the Board of Directors or the Corporation and not reflected in the amounts set forth in paragraphs 1.13 and 1.14."

Also included was the standard merger clause, which provided that "All prior oral or written representations, understandings and agreements had between the Parties with respect to the subject matter of this Contract * * * are merged

in the Contract, which alone fully and completely expresses their agreement."

Plaintiffs' contention that defendants breached the contract is based upon their allegation that on March 20, 1996, during their interview with the Board president, Amal Naj, and a Board member, Georgia Friedman, plaintiffs learned for the first time that the Board had been contemplating major repair work to the building's facade, costing upward of $750,000, in addition to the patchwork, and that the Board was considering a future assessment as an option to finance the work. This information was allegedly confirmed by Marjorie Russell, the building's managing agent.

Taking the position that this information demonstrated a breach of the contract of sale by defendants, in that they failed to disclose the Board's consideration of an assessment, plaintiffs made a written demand that defendants return their escrowed down payment.

Upon the parties' motion and cross-motion, each seeking summary judgment, the motion court granted judgment to plaintiffs, remarking that the critical issue was "whether a possible assessment was an open issue before the Board," at the time of the contract. Elsewhere the motion court referred to the "potential assessment under consideration." I conclude that the motion court incorrectly construed the language of paragraph 4.1.6, and as a result incorrectly decided the motion. I would reverse and grant summary judgment to defendants.

Contracts must be enforced in accordance with their terms (*see, Sharp v Stavisky*, 221 AD2d 216, *lv dismissed* 87 NY2d 968). Here, the defendants' representation that they had no knowledge of any "proposed Assessment" then "under consideration by the Board of Directors," was unambiguous, and its meaning can be construed as a matter of law. " ' "[W]hen the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract" ' " (*International Mar. Investors & Mgt. Corp. v Wirth*, 245 AD2d 544, 545). Only when an ambiguity is found within the four corners of the contract may the court consider extrinsic evidence; extrinsic evidence should not be used to create an ambiguity in a written agreement which is unambiguous on its face (*see, W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 163).

In suggesting that the meaning of the words "proposed Assessment which * * * is under consideration by the Board of Directors" be determined by a jury at trial, the majority neces-

sarily concludes that the words are ambiguous, requiring introduction of extrinsic evidence before they can be interpreted. It is noteworthy that neither party took this position in their motions. Furthermore, in order to conclude that this contract term is ambiguous, the majority seems to have considered not only the words themselves, but also the submitted extrinsic evidence, namely, the alleged representations made during negotiations.

Full review of the common meaning of these terms used in paragraph 4.1.6 reflects that plaintiffs' expansive interpretation is incorrect. The plain, ordinary meaning of the words "proposed Assessment * * * under consideration by the Board", as a matter of law, cannot be construed so broadly as to include a mention, or even an abstract discussion during Board meetings of a possible future assessment.

The term "proposed" conveys a sense that a suggestion was put forward for official consideration (see, Merriam-Webster's Collegiate Dictionary 936 [10th ed 1997] [included in the definitions of "propose" is "to set forth for acceptance or rejection"]; see also, Mount Vernon Contr. Corp. v State of New York, 52 Misc 2d 781, 783 [the word "proposed" entails being "offered for consideration and study"]). Consequently, "proposed" means more than "mentioned".

Similarly, there is a formality to the term "under consideration" that implies more than an informal or impromptu discussion. While the phrase is employed by our courts frequently, it usually refers to the action actually being heard and addressed, and we are not normally called upon to elaborate on or define what exactly it means. However, in one case deciding when an indictment was "under consideration" by a Grand Jury for purposes of former Code of Criminal Procedure § 313 (2) (which required that an indictment be dismissed when a person other than a juror was permitted to be present while a Grand Jury had an indictment "under consideration"), the court concluded that in the times between its hearing of witnesses' testimony, the indictment was not "under consideration" by the Grand Jury (see, People v Conte, 17 Misc 2d 664, 666). And, in Turner Holdings v Howard Miller Clock Co. (657 F Supp 1370, 1380), the court concluded that the "ordinary meaning" of "under consideration" requires that the matter be the subject of "much thought and deliberation". The synonyms provided by Roget's International Thesaurus (4th ed) for the phrase "under consideration" include "on the agenda", "on the table" "on the floor", all of which phrases clearly imply a somewhat formal deliberative process.

I would conclude that as a matter of law, the phrase implies a degree of formality in the process of purposefully deciding how to best resolve an issue presented. Therefore, to demonstrate that a "proposed Assessment" was "under consideration" by the Board, the plaintiffs must show that a proposal was put forward to the Board with some degree of formality. While it need not have been in the form of a formal resolution or proposal requiring a formal vote, it is necessary that the type of proposal be one to which the Board must respond. The motion court therefore erred when it equated a "potential" assessment with a "proposed" assessment under consideration by the Board.

Moreover, as a practical matter, we should also recognize that if we permitted the term in question, "proposed Assessment * * * under consideration by the Board", to be interpreted to cover any situation where a possible future assessment was mentioned or raised in conversation, sellers of cooperative apartments would thereby be made inordinately vulnerable to unwarranted liability. In the context of a residential cooperative corporation, unbudgeted expenses arise frequently, and these costs can only be addressed in limited ways. A cooperative corporation cannot float a bond, cannot sell a product or service at an increased price, and cannot easily reduce existing expenditures. Its primary avenues for raising necessary funds are an assessment or an increase in maintenance charges (*see*, Parella, *1996-97 Survey of New York Law, Real Property*, 48 Syracuse L Rev 821, 829-830 [1998]). Since new, unanticipated expenses arise frequently, the prospect of imposing an assessment is necessarily a consistently contemplated possibility. If the mere contemplation of the possibility of a future assessment is enough to demonstrate that a "proposed Assessment" is "under consideration by the Board", sellers will be held liable virtually any time an assessment is imposed subsequent to execution of a contract of sale.

Plaintiffs make no claim of fraudulent concealment. Nor may they base their contract claim upon allegations that defendants made assurances other than the representations contained in the contract. The language of the contract's merger clause requires full application of the parol evidence rule to bar the introduction of extrinsic evidence to vary the terms of the writing (*see, Matter of Primex Intl. Corp. v Wal-Mart Stores*, 89 NY2d 594, 599; *Citibank v Plapinger*, 66 NY2d 90, 94-95).

A trial is not needed here because the evidence offered by plaintiffs does not even make a prima facie showing that as of February 9, 1996, the Board had a proposed assessment under

consideration. The Board minutes demonstrate that work was in progress concerning the repair of the building facade from February 1, 1995 through January 17, 1996, which included retaining Superstructures (a company that would determine the amount of work required to be undertaken), reviewing Superstructures' recommendations, and refinancing the underlying mortgage to possibly finance the repair work. Nowhere in these minutes is there any evidence that there was a "proposed" assessment presented to the Board for its consideration prior to the time that the parties entered into the contract of sale. Indeed, the first time there was any mention of an assessment was in the April 22, 1996 Board minutes, after plaintiffs had entered into the contract of sale.

The depositions of defendant Janice Tainiter, the managing agent, and the Board president further support the conclusion that there is no evidence of a proposed assessment under consideration by the Board prior to February 9, 1996. While each testified at their deposition that an assessment was mentioned or discussed as an option to repair the building facade, nowhere in their testimony did they mention a time frame for these discussions, nor was there testimony that an actual proposal for an assessment was formally presented to the Board.

The information the Board president and a Board member allegedly disclosed to plaintiffs during the March 20, 1996 interview actually undermines plaintiffs' argument and supports defendants' claim that there was no proposed assessment under consideration. For instance, plaintiff states that the Board president said "the Board was considering an assessment as an option, among other options, as a means to finance the necessary repair work." Assuming this statement was accurate, it simply demonstrates that the Board was merely discussing the possibility of an assessment as an option; it does not demonstrate that the Board had before it for consideration a proposed assessment. In fact, the Board president gave testimony at his deposition to this effect. The Board minutes indicate that a "proposed" assessment was under consideration by the Board between April 22, 1996 and December 11, 1996, which resulted in the Board's adoption of a budget that included a one-month assessment.

The motion court was therefore in error in granting summary judgment to plaintiffs where the evidence, at best, suggests that an assessment was considered some time in 1996; plaintiffs failed to demonstrate that an assessment was under consideration on February 9, 1996, the date the contract was entered into.

The evidence presented by plaintiffs was insufficient as a matter of law to justify termination of the contract of sale. Therefore, as a matter of law, plaintiffs are in default, and defendants are therefore entitled to summary judgment. Pursuant to contract paragraph 13.1, defendants' remedy is to retain the down payment as liquidated damages (*see, Maxton Bldrs. v Lo Galbo*, 68 NY2d 373).

Plaintiffs imply that this result is inequitable, since defendants were able to sell their apartment to other buyers for a greater price. However, although we have been informed of defendants' subsequent circumstances, there is nothing in the record to indicate plaintiffs' subsequent circumstances; it is possible that they too obtained a better deal elsewhere. In any case, the result we reach should not be motivated by the parties' subsequent circumstances, but solely by their rights under the contract and the law.