■ H. ANTHONY ITTLESON et al., Appellants-Respondents, v ROGER BARNETT, Respondent-Appellant. [758 NYS2d 360] —In an action to recover damages for breach of a contract for the sale of real property, the plaintiffs appeal from so much of an order of the Supreme Court, Suffolk County (Pitts, J.), dated May 9, 2002, as denied their motion for summary judgment on the first and second causes of action, and the defendant cross-appeals, as limited by his brief, from so much of the same order as denied his cross motion, in effect, for summary judgment dismissing the complaint and on the counterclaims.

Ordered that the order is reversed insofar as appealed from, on the law, and the motion is granted; and it is further,

Ordered that the order is affirmed insofar as cross-appealed from; and is further,

Ordered that one bill of costs is awarded to the plaintiffs.

This action arose out of a contract between the plaintiff H. Anthony Ittleson (hereinafter the seller) and the defendant (hereinafter the purchaser) for the sale of a vacant oceanfront property located in the Village of Southampton. The contract, dated March 31, 1999, provided for a ten percent down payment of $480,000, to be held in escrow by the seller's attorney. The contract was entered into contingent upon the purchaser obtaining the necessary approvals for a proposed residence within 150 days. The contract provided that the purchaser had the right to terminate the contract if the cost of improving a right-of-way to the property exceeded $81,000. The seller retained the right to allow the purchaser a credit against the purchase price for the property for the excess costs of the improvement above the $81,000 and to proceed with the contract according to its terms. The contract further provided that should the purchaser default on the contract, the seller's sole remedy would be to retain the down payment as liquidated damages.

When the necessary approvals were not obtained within the 150-day period, the parties agreed to extend the time for another 1½ years with the possibility of a second extension of one year, through a modification to the contract. The modification was dated November 9, 1999, and was executed by the seller and buyer. The modification provided that in return for the 1½-year extension, the purchaser agreed to pay $600,000 to a charitable organization of the seller's choice at or before expiration of that period, whether or not title closed. The

purchaser further agreed that the failure to make the payment during that period would constitute a default under the contract and that the payment constituted a nonrefundable payment for the grant of the option.

On February 27, 2001, the seller designated the plaintiff the Ittleson Foundation, Inc. (hereinafter the Foundation), as the charitable organization to become the beneficiary of the $600,000 payment. In May 2001 the seller and purchaser agreed to extend that period an additional 10 days, making May 18, 2001, the ending date of the first extension period. On May 18, 2001, the purchaser sent a letter to the seller purportedly withdrawing from the contract, citing the excess costs of the improvements of the right-of-way above the sum of $81,000. In response, the seller rejected the purchaser's cancellation of the contract on the basis that he did not provide proof of the excess costs and reminded the purchaser that the payment of the $600,000 was past due. On June 7, 2001, the seller demanded release of the down payment citing the purchaser's breach in not tendering the consideration for the extension. The next day, the seller's counsel, by letter, stated that the seller had declared the contract at an end, and demanded the release of the down payment and the payment of the $600,000. The letter stated that the reason for the contract's termination was the purchaser's failure to pay the $600,000 consideration. The purchaser responded by indicating that he rejected the seller's claims, and served notice that he was holding the seller in breach of contract.

The seller and the Foundation commenced this action and moved for summary judgment on the first and second causes of action seeking payment of the $600,000 consideration, and retention of the down payment as liquidated damages for breach of the contract. The purchaser cross-moved for summary judgment arguing that the modification was an extension of the contract, and therefore the $600,000 payment was not subject to a time of the essence clause. He argued that he is willing to carry out the contract, that the seller breached the contract, and that he is entitled to specific performance. In the alternative, he stated that if the plaintiffs were awarded the $600,000 payment and the down payment they would be unjustly enriched.

The Supreme Court denied the motion and cross motion, finding an issue of fact existed. We disagree. The modification provided that the purchaser was obligated to make the $600,000 payment at or before the expiration of the 1½-year period, as extended. There is no dispute that the purchaser

failed to make the required payment. As the seller adhered to his portion of the agreement by keeping the contract open for 1½ years, the purchaser is required to pay the agreed-upon consideration of $600,000 to the Foundation. Therefore, the plaintiffs are entitled to summary judgment on the first cause of action.

The plaintiffs contend, in the second cause of action, that the purchaser, by failing to make the payment within the time required, defaulted on the contract, and that the seller is entitled to retain the down payment. The purchaser contends that the modification was a bilateral contract, not an option contract, and therefore time was not of the essence. Consequently, the purchaser contends that the failure to make the payment within the time required was not a default, and the seller is not entitled to retain the down payment.

An option contract is an agreement to hold an offer open; it confers upon the optionee, for consideration paid, the right to purchase at a later date (*see Kaplan v Lippman,* 75 NY2d 320, 324 [1990]; *Leonard v Ickovic,* 79 AD2d 603 [1980], *affd* 55 NY2d 727 [1981]). The general rule in regard to options is that the provisions of the contract must be complied with strictly, in the manner and within the time specified (*see T.I.P. Holding No. 2 Corp. v Wicks,* 63 AD2d 263 [1978]; *Boal v Smith,* 35 AD2d 730 [1970], *affd* 29 NY2d 518 [1971]).

The instant contract is an option contract and therefore time was of the essence. The purchaser, by failing to make the $600,000 payment in that time period, was in breach of the contract. In accordance with the terms of the contract, upon the purchaser's breach, the seller was entitled to retain the ten percent down payment as liquidated damages. Retention of the down payment does not constitute unjust enrichment. "For more than a century it has been well settled in this State that a vendee who defaults on a real estate contract without lawful excuse, cannot recover the down payment" (*Maxton Bldrs. v Lo Galbo,* 68 NY2d 373, 378 [1986]). "[R]eal estate contracts are probably the best examples of arm's length transactions. Except in cases where there is a real risk of overreaching, there should be no need for the courts to relieve the parties of the consequences of their contract. If parties are dissatisfied with [this rule] the time to say so is at the bargaining table" (*Maxton Bldrs. v Lo Galbo, supra* at 382). Therefore, the plaintiffs are entitled to summary judgment on their second cause of action.

The parties' remaining contentions are without merit. Ritter, J.P., Santucci, Smith and Luciano, JJ., concur.