KINGSBRIDGE MEDICAL CENTER, P.C., Mikhail Palatnik, M.D., Theradynamics Physical Rehabilitation, Inc., and Alexander Solovey, Plaintiffs,

v.

Kenneth A. HILL, Cumberland River, Inc., and Cumberland and River Health and Human Services d/b/a Cumberland River Health and Human Services Corp., Defendants.

No. 04 Civ. 0673(VM).

United States District Court, S.D. New York.

Feb. 28, 2005.

Carmen S. Giordano, Law Office of Carmen S. Giordano, New York, NY, for Plaintiffs.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs Kingsbridge Medical Center, P.C., Mikhail Palatnik, M.D., Theradynamics Physical Rehabilitation, Inc., and Alexander Solovey (collectively "Plaintiffs") brought this action on January 29, 2004 against defendants Kenneth A. Hill, Cumberland River, Inc., and Cumberland and River Health and Human Services d/b/a Cumberland River Health and Human Services Corp. ("Defendants") alleging violations of the Racketeer Influenced and Corrupt Organizations statute (the "RICO statute"), 18 U.S.C. § 1961 *et seq.*, and asserting related state claims sounding in fraud, conversion, breach of contract, negligent representation and unjust enrichment. As Defendants never answered or entered an appearance on this matter, Plaintiffs filed for and obtained a default

judgment on July 9, 2004. The Court held an inquest hearing to determine the extent of Plaintiffs' damages on November 12, 2004 (the "Inquest Hearing").

The Court finds that Plaintiffs have not at this time sufficiently proven any damages in this matter. Plaintiffs are not entitled to recover the $1,000,000 provided for as liquidated damages in the Purchase Option Contract because this provision is an unenforceable penalty clause. Plaintiffs are also not entitled to recover the monthly installment payments on the contract because of the ambiguous nature of the contract and Plaintiffs' failure to make any showing as to the essence of the agreement with respect to the monthly payments. Plaintiffs alluded to other types of damages at the Inquest Hearing to which they may be entitled, such as any funds constituting unjust enrichment; however, Plaintiffs failed to provide adequate proof of such damages at the Hearing. The Court, therefore, denies Plaintiffs' request for an award of the damages they seek, without prejudice to Plaintiffs submitting evidence supporting recovery on other theories of damages.

## I. BACKGROUND [1]

Plaintiff Kingsbridge Medical Center, P.C. ("Kingsbridge") is a private medical facility in Bronx County, New York, and Plaintiff Theradynamics Physical Rehabilitation, Inc. ("Theradynamics") is a private physical rehabilitation facility located within the same building as Kingsbridge. Plaintiff Mikhail Palatnik ("Palatnik") is a doctor and was the owner of Kingsbridge at the time of the events relevant to the Complaint.[2] Plaintiff Alexander Solovey ("Solovey") is a physical therapist, Palat-

nik's cousin and the owner of Theradynamics.

Solovey was told by Bill Adams ("Adams"), a healthcare consultant in New York, that a representative of the Seventh Day Adventist Church was looking to acquire medical facilities in New York. When Solovey expressed interest, Adams arranged for a meeting with this representative. Thereafter, according to Plaintiffs, Kenneth A. Hill ("Hill") arrived at the Plaintiffs' building in the Bronx in a Mercedes limo, splendidly dressed, and was introduced to Solovey by Adams. Hill gave a presentation to Solovey concerning the interests and needs of the Seventh Day Adventist Church, and alleged that he was acquiring Parkway Hospital in Queens for the church. Solovey and Hill discussed the possibility of the sale of Theradynamics, and Hill stated that he wished to purchase both Theradynamics and Kingsbridge. Solovey spoke with Palatnik, and the two began negotiations with Hill for the sale of both practices. During negotiations, Solovey contacted Parkway Hospital and confirmed that Hill was in the process of purchasing the Hospital and had made a down payment.

On October 3, 2002, Hill signed an Administrative Services Agreement (the "Agreement") with Kingsbridge under which Hill's company, Cumberland River, Inc. ("Cumberland River"), would provide both Kingsbridge and Theradynamics with non-medical administrative services for one year and be paid a monthly fee by Plaintiffs for such services. Hill could not buy Kingsbridge outright because he was not a physician; however, Hill entered into a Purchase Option Agreement (the "Option

---

1. The following facts are taken from Plaintiff's submissions, including the Complaint, filed on January 29, 2004, and the Damages Inquest Memorandum, filed on October 28, 2004, and testimony given at the Inquest Hearing. No citation will be made to these sources, unless specifically noted.

2. The Court was informed at the Inquest Hearing that Palatnik has since sold his interest in Kingsbridge and moved to California.

Contract") with Plaintiffs to buy both Kingsbridge and Theradynamics. Under the Option Contract, Cumberland River, which was the listed "Purchaser," was obligated to make (1) an "Option Exercise Payment" of $50,000; (2) a "Monthly Payment" of $25,000, which if not paid could lead to the termination of the Option Contract by Plaintiffs; and (3) an "Option Payment" of $2,500,000, the payment of which granted Cumberland River a Purchase Option to purchase the property for an additional $2,500,000, which was the "Option Purchase Price."[3] If Hill defaulted or decided not to exercise the Option Contract for any reason or no reason, he was obligated to pay Theradynamics and Kingsbridge $1,000,000 (the "Cancellation Payment"). The understanding, as stated by Solovey, was that Hill would purchase the companies as soon as the Parkway Hospital deal was completed, and that, in the interim, the provision of administrative services to Kingsbridge and Theradynamics would help to familiarize Hill and his employees with the businesses.

After the contracts were signed, Hill was brought to Kingsbridge and Theradynamics to be introduced to the staff and shown around the facility. Solovey made two checks out to Cumberland River in amounts of $120,000 and $30,000, which represented the funds in Theradynamics's operational accounts, and gave them to Hill to cover Theradynamics's operational expenses, including the disbursement of payroll and payment of all bills for the business. Kingsbridge also transferred money to Hill, approximately $40,000,[4] and paid up some of its outstanding bills to facilitate the management transition.

Hill began performing his obligations under the Agreement, and continued to perform for approximately two months. Checks were issued from Cumberland River Health and Human Services to pay Kingsbridge's and Theradynamic's bills and payroll, and a manager was hired by Hill to coordinate operations at the Kingsbridge facility. Hill directed Plaintiffs to pay him the monthly payments he was due under the Agreement for managing the administrative aspects of the businesses. Hill, however, never made any of the Monthly Payments required under the Option Contract in the first two months after signing the agreement. Additionally, some of the checks written from Cumberland River Health and Human Services accounts for operational expenses and payroll bounced due to insufficient funds in those accounts.

At this point, Solovey became suspicious and began to investigate Hill more thoroughly. Hill continued to give Solovey assurances and stated that the purchase of Parkway Hospital was nearly complete. The relationship continued for several more weeks until all of Kingsbridge's and Theradynamic's payroll checks for one pay period bounced and went unpaid. At that point, Plaintiffs stopped paying Hill the monthly fee on the Agreement. By letter from its lawyer, dated December 24, 2002, Kingsbridge alerted Hill that he was in breach of the Agreement and that he had misappropriated the funds of Kingsbridge and Theradynamics. Attached to the letter was a Default Notice detailing Hill's alleged breaches of the Agreement. Hill never responded to the letter or Default Notice.

Plaintiffs brought the instant action on January 29, 2004 alleging violations of the RICO statute and state law claims includ-

---

3. The Court notes that these multiple terms create ambiguity in the contract, an issue which is dealt with more thoroughly *infra* at Part II.B.

4. Copies of the checks to Cumberland River from Theradynamics were introduced at the Inquest Hearing; no copy of the Kingsbridge check was produced.

ing breach of the Agreement, breach of the Option Contract, fraud, conversion, negligent misrepresentation and unjust enrichment, and seeking damages on all counts in the amount of $1,000,000, plus costs, attorneys' fees, treble damages on the RICO claim, punitive damages on the state law claims for fraud, conversion and negligent misrepresentation, together with interest, costs and disbursements. Defendants never answered or appeared in this action, and so a default judgment was entered in favor of Plaintiffs on July 9, 2004.

Plaintiffs filed their Damages Inquest Memorandum (the "Inquest Memorandum") on October 28, 2004 claiming $1,275,000 in damages arising primarily from the Monthly Payments and Cancellation Payment clauses in the Option Contract. The Court held an Inquest Hearing on November 12, 2004 at which Solovey was the only witness. Solovey's testimony primarily concerned the background facts of Hill's alleged fraud on Plaintiffs.

## II. *DISCUSSION*

The Court accepts as true all of the factual allegations of the Complaint, except those relating to damages. *See Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981). In fixing the amount of damages to award to Plaintiffs on those facts, the Court must consider "to what extent Plaintiffs ... have demonstrated 'with reasonable certainty' that they are legally entitled to damages." *Ahava (USA), Inc. v. J.W.G., Ltd.,* 286 F.Supp.2d 321, 324 (S.D.N.Y.2003) (quoting *Au Bon Pain,* 653 F.2d at 65). The Court has wide discretion in making this determination. *See id.* at 324 (citing *Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317, 321 (2d Cir.1986)).

The Court will consider each claimed form of damages in turn, beginning with those relating to the Option Contract. Because the Option Contract was a part of the Agreement, *see* Agreement ¶ 27 (included in Plaintiffs' Inquest Memorandum as Ex. A), it is governed by New York law as stated in the Agreement.[5]

### A. *THE CANCELLATION PAYMENT*

The Option Contract states at paragraph 4, entitled "Cancellation Payment," that the purchaser "shall pay seller $1,000,000" if the purchaser defaults or decides not to exercise the purchase option "for any reason or no reason at all."

■ Under New York law, "[a] contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation.... If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced." *Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.,* 41 N.Y.2d 420, 393 N.Y.S.2d 365, 361 N.E.2d 1015, 1018 (1977) (internal citations omitted); *see also Leasing Serv. Corp. v. Justice,* 673 F.2d 70, 73–74 (2d Cir.1982) (citing *Truck Rent–A–Center* ).

■ The "Cancellation Payment" identified in paragraph 4 of the Option Contract does not appear to have any relationship to Plaintiffs' probable losses under the contract. Plaintiffs' probable losses from the default of this contract would likely include, for example, the costs of procuring other purchasers for the two businesses.

---

**5.** Even if not considered a part of the Agreement, the Option Contract would be governed by New York law, as the contract was negotiated and signed in New York, and the place of performance and the location of the subject matter of the contract were in New York. *Maryland Cas. Co. v. Continental Cas. Co.,* 332 F.3d 145, 151–52 (2d Cir.2003).

The $1,000,000 "Cancellation Payment" seems "grossly disproportionate" to any reasonable estimate of the costs associated with finding another purchaser for the properties. That Hill was obligated to make the Cancellation Payment even if he did not exercise the Option Contract is further evidence that the amount was not included as an estimation of Plaintiffs' probable losses under the contract, and instead was intended "to secure performance by threat of a large payment." *Quaker Oats Co. v. Reilly,* 274 A.D.2d 565, 711 N.Y.S.2d 498, 500 (2d Dept.2000). Therefore, the Court finds that the Cancellation Payment provision is an unenforceable penalty and the $1,000,000 is not recoverable under the Option Contract as damages.

B. *THE MONTHLY INSTALLMENT PAYMENTS*

Plaintiffs claim to be owed $275,000 as a result of Defendants' failure to pay the $25,000 "Monthly Payment" owed under the Option Contract for eleven months. *See* Ex. B ¶ 2, at 1.

■ "An option contract is an agreement to hold an offer open and confers on the optionee, for consideration paid, the right to purchase at a later date. While the optionor cannot act in derogation of the terms of an option agreement, the optionee is not bound until the option is actually exercised." 22 N.Y. Jur. Contracts § 57 (citing *Kaplan v. Lippman,* 75 N.Y.2d 320, 552 N.Y.S.2d 903, 552 N.E.2d 151 (N.Y.1990)); *see* Restatement (Second) of Contracts § 87(1)(a) (1981) ("An offer is binding as an option contract if it is in writing and signed by the offeror, recites a purported consideration for the making of the offer, and proposes an exchange on fair terms within a reasonable time....").

■ Plaintiffs have not sufficiently shown that Hill either paid consideration for the Option Contract or exercised the Option Contract such that he or any of the Defendants were bound by it. Nor have Plaintiffs provided evidence that Defendants ever paid the $50,000 "Option Exercise Fee," or made any other payments under the Option Contract.

Furthermore, even if Hill had made such a payment, the multiple payment provisions in the contract make the nature of the obligations under the contract ambiguous, such that the Court is unable at this juncture to make a determination of the damages owed under it. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1094–95 (2d Cir.1993). Some of the ambiguity arises from the fact that defendant Cumberland River was obligated under the Option Contract to make several different payments, all seemingly for the same purpose—to obtain the option to purchase Kingsbridge and Theradynamics. Cumberland River was obligated to pay $50,000 to make the Option Contract "effective," then an additional $25,000 per month, which if not paid gave Plaintiffs the ability to cancel the contract, and finally $2,500,000 for the "Purchase Option," which, once paid, obligated Plaintiffs to give Defendants the exclusive option to purchase Kingsbridge and Theradynamics for the "option period." These vague multiple payment provisions to acquire the same benefit seem duplicative and raise substantial questions as to the parties' real intent that the Court is not able to resolve in Plaintiffs' favor on the record before it.

■ Even were the Court to find that the Option Contract was clear in its terms, under New York law, when a purchaser defaults on a real estate contract, the appropriate award of damages is the seller's retention of the down payment on the agreement. *Maxton Builders, Inc. v. Lo Galbo,* 68 N.Y.2d 373, 509 N.Y.S.2d 507, 502 N.E.2d 184, 186 (N.Y.1986); *see Ittle-*

son v. Barnett, 304 A.D.2d 526, 758 N.Y.S.2d 360, 362–63 (2d Dept.2003) (applying *Maxton Builders* in the context of an option contract for the sale of property). Given the ambiguity of the Option Contract and Plaintiffs' failure to make any showing as to the essence of the agreement, aside from plainly stating that the Defendant owed the amounts due on the "Monthly Payment" provision, this Court cannot award the damages claimed by the Plaintiffs.

### C. OTHER POTENTIALLY RECOVERABLE TYPES OF DAMAGES

Although Plaintiffs have not made out a case for the recovery of either of the two sources of damages they claim in the instant motion, it appears from both the Complaint and the Inquest Memorandum that there may be other forms of damages that Plaintiffs might recover, should sufficient evidence be presented supporting the claims, such as any funds misappropriated by Defendants. (*See* Pls.' Mem. ¶¶ 2, 18; Ex. D ¶ 13,. Ex. E ¶ 9; Ex. G.) Although Plaintiffs submitted at the Inquest Hearing two checks which arguably represent at least a portion of the funds that were misappropriated by Defendants, Plaintiffs admit that some portion of those funds was used legitimately to pay the expenses of running Theradynamics. (*See, e.g.,* Tr. at 18–19.) Plaintiffs, therefore, have not made a sufficient showing at this time to justify the award of any damages.

As the Court finds that there may be damages which Plaintiffs might be entitled to recover should they make an adequate showing, under the Federal Rules of Civil Procedure Rule 55(b)(2) it is within the power of the Court to order additional hearings to determine the amount of any damages that may be awarded under the default judgment. The Court will not re-hear claims for damages that failed at the first Inquest Hearing, as those claims are not recoverable as a matter of law. *See*

*supra.* If Plaintiffs elect to pursue any additional claims for damages, their statement of theories, the amounts claimed, together with all supporting documentation, shall be filed with the Court and served on Defendants by April 1, 2005.

### III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the request of plaintiffs Kingsbridge Medical Center, P.C., Mikhail Palatnik, M.D., Theradynamics Physical Rehabilitation, Inc., and Alexander Solovey ("Plaintiffs") for damages in the amount of $1,275,000 based upon the liability of defendants Kenneth A. Hill, Cumberland River, Inc., and Cumberland and River Health and Human Services d/b/a Cumberland River Health and Human Services Corp. ("Defendants") for the Cancellation Payment and Monthly Payments under the Purchase Option Contract is DENIED; it is further

**ORDERED** that Plaintiffs may submit documentary evidence of any other types of damages incurred as a result of Defendants' actions. Such evidence must be submitted by April 1, 2005, after which point a second inquest hearing may be scheduled should the Court find such hearing necessary; and it is finally

**ORDERED** that, should Plaintiffs fail to submit any evidence to support additional theories for the recovery of damages by April 1, 2005, the case will be finally closed and Plaintiffs shall be awarded only their attorneys' fees, costs and disbursements associated with the bringing of this action insofar as authorized by the parties' agreements.

**SO ORDERED.**