KINGVISION PAY–PER–VIEW LTD., as Broadcast Licensee of the November 13, 2004, Ruiz/Golota Program, Plaintiff,

v.

Mario W. LALALEO, Individually and as officer, director, shareholder and/or principal of Restaurant Las Flores, Inc. d/b/a Las Flores Restaurant a/k/a Las Flores Rest.; and Restaurant Las Flores, Inc. d/b/a Las Flores Restaurant a/k/a Las Flores Rest., Defendants.

No. 05–CV–2659 (SLT).

United States District Court, E.D. New York.

April 24, 2006.

Julie Cohen Lonstein, Esq., The Lonstein Law Office, P.C., Ellenville, NY, for Plaintiff.

Mario W. Lalaleo, Ridgewood, NY, for Defendant.

Restaurant Las Flores Inc., Brooklyn, NY, for Defendant.

### MEMORANDUM and ORDER

TOWNES, District Judge.

Plaintiff Kingvision Pay–Per–View Ltd., is a franchised cable television operator which markets and licenses the commercial viewing of boxing events on a pay-per-view basis. In May 2005, plaintiff commenced this action by filing a complaint alleging that defendants intercepted the signal for a boxing event—the November 13, 2004, Ruiz/Golota Program—without authoriza-

tion and showed it to patrons at Las Flores Restaurant, a Brooklyn establishment with a capacity of approximately 30 persons. In November 2006, after defendants failed to answer or to move to dismiss the First Amended Complaint, plaintiff moved for a default judgment. By order dated February 23, 2006, this Court referred plaintiff's motion to Magistrate Judge Joan M. Azrack for a report and recommendation.

In a report and recommendation dated March 20, 2006 (the "R & R"), Judge Azrack recommended that this Court grant plaintiff's motion and that a judgment be entered against defendants, jointly and severally, in the amount of $13,575.00. *See Kingvision Pay–Per–View Ltd. v. Lalaleo,* No. CV–05–2659 (SLT)(JMA), slip op. at 12 (E.D.N.Y. Mar. 20, 2006). Of that amount, $1,500.00 constituted statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and $10,000 was enhanced damages for the willful violation of 47 U.S.C. § 605(a). Of the remaining $2,075.00, $1,325.00 was attorney's fees and $750.00 was costs.

On or about March 21, 2006, Judge Azrack disseminated the R & R by uploading a copy onto ECF and by mailing copies to both defendants. The R & R advised the parties that any objections had to be filed within ten (10) days of their receipt of the R & R, and that the failure to file objections within this time period would waive the right to appeal this Court's order. *See Lalaleo,* slip op. at 12. To date, this Court has not received any objections to the R & R from any of the parties.

Under 28 U.S.C. § 636(b)(1), if any party serves and files written objections to a magistrate judge's recommendations within ten days of being served with a copy of thereof, a district court must "make a de novo determination of those portions of the report or ... recommendations to which objection is made." *Id.* Upon de novo review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A court is not required to review the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Since the parties have not filed any objections to Judge Azrack's prompt and thorough report and recommendation, this Court need not engage in de novo review. *See Thomas,* 474 U.S. at 150, 106 S.Ct. 466. Nonetheless, this Court has reviewed the papers submitted by plaintiff in this case and the reasoning set forth in the R & R. This Court agrees with Judge Azrack's reasoning in all respects, except with regard to her recommendation that this Court award plaintiff $750.00 in "costs," including "a $100 reimbursement of the investigator's fees." *See Lalaleo,* slip op. at 11.

Under 47 U.S.C. § 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails" in an action alleging a violation of 47 U.S.C. § 605(a). Many courts—like the court in *Time Warner Cable of New York City v. Sanchez,* No. 02 Civ. 5855(GBD)(FM), 2003 WL 21744089 (S.D.N.Y. July 8, 2003), the case cited in the R & R—have construed the term, "full costs," as meaning, "taxable costs." *See, e.g., id.,* at *5; *Garden City Boxing Club, Inc. v. Salcedo,* No. 04 Civ. 5027(DFE), 2005 WL 2898233, at *3 (S.D.N.Y. Nov.3, 2005) (including the investigator's fee as part of "costs and disbursements"); *Garden City Boxing Club, Inc. v. Bello,* No. CV–05–1300 (ARR)(JMA), 2005 WL

2496062, at *6 (S.D.N.Y. Sept. 20, 2005) (implying that investigative costs are taxable costs); *Kingvision Pay–Per–View Ltd. v. Cardona*, No. 03 Civ. 3839(GBD)(FM), 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) (treating investigative costs as taxable costs). Furthermore, at least two of these courts have held that investigator's fees cannot be awarded because "[t]here is no provision for a prevailing party to be awarded the cost of its investigator" in 28 U.S.C. § 1920, the section defining what expenses can constitute "taxable costs." *Cardona*, 2004 WL 1490224, at *4; *Sanchez*, 2003 WL 21744089 at *5.

Although the term, "full costs," is not defined in the statute, both the plain meaning of the statutory language and the legislative history of § 605(e)(3)(B)(iii) suggest that this term was intended to include expenses other than "taxable costs." First, under 28 U.S.C. § 1920, taxable costs include only the following expenses:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under [28 U.S.C. § 1923];

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

Because this list embodies "Congress' considered choice" as to what expenses should be taxable, courts are not permitted to allow taxation of costs not included in the list. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440–42, 107 S.Ct. 2494,

96 L.Ed.2d 385 (1987). Attorney's fees are not on the list; therefore, "taxable costs" do not include attorney's fees. Since § 605(e)(3)(B)(iii) implies that "full costs" include "reasonable attorneys' fees," the "full costs" permitted under § 605(e)(3)(B)(iii) both differ from, and can exceed, the "taxable costs" recoverable under 28 U.S.C. § 1920.

Second, what little legislative history exists also supports this broad reading of the term, "full costs." Upon approval of the Cable Communications Policy Act of 1984—the legislation which added the relevant portions of 47 U.S.C. § 605—the Chairman of the Senate Committee on Commerce, Science, and Transportation issued the following statement:

It is the intent of the Committee that the power to direct the recovery of all costs under (3)(B)(iii) shall include reasonable investigative fees (related to the action brought) of an aggrieved party.

Statement of Sen. Robert W. Packwood, Chairman of Comm. on Commerce, Science, & Transp., 130 Cong. Rec. § 14286 (daily ed. Oct. 11, 1984), *as reprinted in* 1984 U.S.C.C.A.N. 4742, 4750, 1984 WL 37497 (Leg.Hist.) (1984). Although there is nothing to suggest that Congress as a whole shared the Committee's intent when it enacted the statute at issue, this language at least supports the view that Congress intended "full costs" to include investigative costs.

■ However, "[t]he legislative history for § 605(e) instructs that the court has the power to direct the recovery of investigative fees, not that the court is required to order such an award." *Int'l Cablevision, Inc. v. Noel*, 982 F.Supp. 904, 918 (S.D.N.Y.1997). In order to recover investigative costs a plaintiff must make a showing similar to that required to recover attorney's fees. "[A] request for investiga-

tive fees pursuant to § 605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected." *Id.* Thus, a plaintiff must document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." *Id.*

■ In this case, the documentation supplied by plaintiff's counsel is insufficient. Although the investigator's invoice, attached as Exhibit D to Plaintiff's Affidavit for Default, indicates that the investigator charged plaintiff for one hour at an hourly rate of $350.00, plaintiff has not adduced any evidence concerning the investigator's qualifications. Accordingly, this Court has no basis for assessing the reasonableness of this rate, except to note that $350.00 per hour exceeds the rate usually awarded to experienced attorneys in this district. *See, e.g., Commission Express Nat'l, Inc. v. Rikhy,* No. CV–03–4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb.17, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners"); *Levy v. Powell,* No. CV–00–4499 (SJF), 2005 WL 1719972, at *9 (E.D.N.Y. July 22, 2005) ("In 2003 and 2004, district courts in the Eastern District found rates of between $225.00 and $300.00 for partners to be reasonable."); *LaBarbera v. J.E.T. Resources, Inc.,* 396 F.Supp.2d 346, 352 (E.D.N.Y.2005) (rates of $250 to $350 per hour are unreasonably high for legal services in this district).

Moreover, this Court has no basis for determining whether the time allegedly spent on this investigation was reasonable. The investigator's own "Piracy Affidavit," which is attached as Exhibit C to Plaintiff's Affidavit for Default, indicates that the investigator was inside Las Flores Restaurant for 17 minutes, and returned three days later to take two photographs of the exterior of the restaurant. In light of the poor quality of the two photographs attached to the Piracy Affidavit, it seems highly unlikely that the photography took 43 minutes. Accordingly, there is nothing to indicate how the investigator spent most of the hour for which he charged plaintiff.

Because of these deficiencies in the evidence concerning the investigative costs, this Court declines to award such costs. Judge Azrack's recommendation is therefore modified to the extent of reducing the costs to be awarded to plaintiff from $750.00 to $650.00.

## CONCLUSION

For the reasons stated above, Judge Azrack's Report and Recommendation, dated March 20, 2006, is modified to the extent of reducing by $100.00 both the costs to be awarded—from $750.00 to $650.00—and the total amount to be awarded—from $13,575.00 to $13,475.00. Judge Azrack's Report and Recommendation is adopted in all other respects. The Clerk of Court is directed to enter judgment in accordance with that Report and Recommendation, as modified by this Memorandum and Order.

**SO ORDERED.**

### *REPORT AND RECOMMENDATION*

AZRACK, United States Magistrate Judge.

By order dated February 19, 2006 the above captioned matter was referred to me by the Honorable Sandra L. Townes, pursuant to 28 U.S.C. § 636(b), for a report and recommendation to determine plaintiff Kingvision Pay–Per–View's motion for a default judgment against defendants MARIO W. LALALEO, individually and as officer, director, shareholder and/or principal of Restaurant Las Flores Inc.

d/b/a Las Flores Restaurant a/k/a Las Flores Rest. and RESTAURANT LAS FLORES INC. a/k/a Las Flores Rest. d/b/a Las Flores Restaurant (hereafter "Las Flores") for alleged violations of the Cable Communications Policy Act, and to determine the scope of plaintiff's relief, including damages, attorney's fees, and costs. In addition, plaintiff requests a permanent injunction restraining defendants from further violating 47 U.S.C. § 605(a) (1996).

For the reasons set forth below, I respectfully recommend that plaintiff's motion for default be granted and a judgment entered against defendants, jointly and severally, in the amount of $13,575.00, reflecting $1,500.00 in statutory damages, $10,000.00 for willful violation of the statute, as well as $2,075.00 for attorney's fees and costs. Additionally, I respectfully recommend denying the request for a permanent injunction.

## I. BACKGROUND

Plaintiff Kingvision Pay–Per–View Ltd. ("Kingvision Pay–Per–View") was a broadcast licensee of the professional fight between Ruiz/Golota on November 13, 2004 (Dkt. No. 5: 10/17/05 Am. Compl. ¶ 15; Dkt No. 8: 10/18/05 Pl.'s Aff. for Default ("Pl.'s Aff."), Ex. A). Plaintiff expended funds to obtain the rights to the program and contracted with nineteen establishments in New York State to broadcast it (Pl.'s Aff. ¶¶ 5, Ex. B). Defendants' establishment did not contract with plaintiff to legally broadcast the boxing match. (*Id.* ¶ 6).

The interstate transmission of the match was electronically coded ("scrambled") to protect its access from those who did not pay or properly obtain a license for its viewing. By failing to contract with plaintiff for the rights to air the boxing match in their establishment, defendants would not have had the ability to receive the signal without (i) the use of a "blackbox", which is purchased for a fee and when installed on a cable TV line will descramble reception of pay-per-view broadcasts; (ii) misrepresenting their commercial nature to the cable company in order to receive transmission at a residential price between $25.00 and $50.00; or (iii) the use of an illegal cable drop or splice from an apartment or home adjacent to the commercial establishment that had already purchased the broadcast at the residential price (Pl.'s Aff. ¶ 10).

On November 13, 2004, without authorization, defendants intercepted and received the signal for the Ruiz/Golota boxing event. Defendants then played the fight for patrons in their commercial establishment, Las Flores, located at 1497 Myrtle Avenue, Brooklyn, New York 11237 (*Id.*, Ex. C: Piracy Aff.). An investigator for plaintiff found that, when he visited Las Flores at approximately 10:32 p.m. there were thirteen patrons present for the broadcast of the fight (*Id.*). The investigator estimated that Las Flores' approximate capacity was thirty patrons (*Id.*).

Plaintiff filed an amended complaint on October 17, 2005 (Dkt No. 5: 10/17/05 Am. Compl.). Defendants were served on October 18, 2005 (Dkt Nos. 7: 10/20/05). Defendants failed to answer or otherwise move, and, on February 19, 2005, Judge Townes referred plaintiff's motion for a default judgment to me (Dkt No. 11: 02/23/06 Order).

## II. DISCUSSION

### A. Default

Defendants' default is deemed an admission of the use of an unauthorized device to intercept coded and scrambled cable transmissions. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,*

973 F.2d 155, 158 (2d Cir.1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir.1997) (recognizing that the factual allegations in the complaint, except those relating to damages, are deemed true after default). Defendants have thus admitted to violating both sections 553 and 605.

▪ Plaintiff, however, must prove damages before the entry of a final default judgment. *See Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981). The District Court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. *See Transatlantic Marine*, 109 F.3d at 108. Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, when granting a default judgment, if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence ... the court may conduct such hearings or order such references as it deems necessary and proper." The Second Circuit has held that, under Rule 55(b)(2), "it is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine*, 109 F.3d at 111 (internal quotations omitted).

### B. Damages

Plaintiff seeks statutory damages for defendants' violation of the Cable Communications Policy Act, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a), as well as enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Section 553 prohibits persons from intercepting or receiving "any communications service offered over a cable system, unless specifically authorized to do so ..." 47 U.S.C. § 553(a)(1). Section 605 proscribes the unauthorized interception and publication of any "radio communication." *Id.* § 605(a). The court has discretion in assessing the amount of damages under these provisions. *See Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F.Supp. 107, 110 (E.D.N.Y.1997).

### 1. Statutory Damages

Plaintiff seeks damages for defendants' violations of 47 U.S.C. §§ 553(a)(1) and 605(a). Section 553(a)(1) prohibits persons from intercepting or receiving "any communications service offered over a cable system, unless specifically authorized to do so ...." 47 U.S.C. § 553(a)(1). Section 605 proscribes the unauthorized interception and publication of any "radio communication." *Id.* § 605(a).

▪ Where a defendant admits to violating both sections, a plaintiff may elect to recover damages under § 605, which provides for greater recovery than § 553. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131 n. 5 (2d Cir.1996), *cert. denied sub nom. Noel v. Int'l Cablevision*, 519 U.S. 929, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996). Section 605 states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, instead of actual damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). As a result of defendants' default, Kingvision Pay–Per–View has been unable to ascertain the extent of defendants' violations. Therefore, plaintiff has elected to recover statutory damages.

The range of statutory damages for a violation of section 605(a) is $1,000 to $10,000. *Id.* The court has discretion to determine the number of violations and assess damages for each violation. *Id.* The

statute does not clearly define "violation"; rather, the court decides which of the defendants' acts constitutes a violation.

■ The court has two options when assessing damages under section 605. First, it can multiply the number of patrons present at the unauthorized broadcasting by a specific dollar amount, typically the customary charge for the pay-per-view event being shown. *See, e.g., Taco Rapido Rest.*, 988 F.Supp. at 111 (awarding statutory damages of $50 per patron); *Cablevision Systems Corp. v. 45 Midland Enterprises*, 858 F.Supp. 42, 45 (S.D.N.Y. 1994) (awarding statutory damages of $50 per patron). Alternatively, where the exact number of patrons is unknown, the court can impose damages based on what it "considers just." *Kingvision Pay–Per–View, Ltd. v. Scott E's Pub. Inc.*, 146 F.Supp.2d 955, 959 (E.D.Wis.2001) (awarding $5,250 in statutory damages); *Home Box Office v. Champs of New Haven, Inc.*, 837 F.Supp. 480, 484 (D.Conn.1993) (awarding $10,000.00 in statutory damages).

Other factors that the court may consider in assessing a plaintiff's damages are "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, ... the financial needs and earning ability of the defendant ... as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." *Cablevision Sys. Corp. v. De Palma*, No. CV–87–3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting *Cablevision Sys. Dev. Co. v. Cohen*, No. CV–84–1155, slip op. at 4–5 (E.D.N.Y. May 20, 1988)).

Kingvision Pay–Per–View invests millions of dollars annually promoting boxing broadcasts. With each establishment that pirates signals, plaintiff suffers an erosion of its profits and is consequently forced to pass off costs to lawful residential and commercial customers through increased pricing (Pl.'s Aff. ¶¶ 3, 11, 13).

There is no information whatsoever about defendants, other than a drawing of the interior of the restaurant at 1497 Myrtle Avenue provided by plaintiff's investigator. I am therefore inclined to conclude that defendants' showing of the fight the night of November 13, 2004 was a single violation, and to utilize the per-patron method to establish damages. An affidavit from Donna Westrich, Vice–President of Kingvision Pay–Per–View, states that the residential rate for the Ruiz/Golota event was between $25.00 and $50.00. (*Id.* ¶ 10B.) Plaintiff's fee for sub-licensing the broadcast to commercial establishments in New York is set forth in Kingvision's "Fight Card," and was set at approximately $10.00 per patron based on the fire code occupancy of the establishment, plus a $225.00 auditing fee. (Westrich Aff., Ex. B). Thus, had defendants paid the sub-licensing fee for their establishment, which plaintiff's investigator estimated to have an approximate capacity of 30 persons, the cost would have been $525.00. If defendants were made to pay this price, however, their actions of pirating the broadcast would carry no more ramifications than had they legally contracted with plaintiff to exhibit the event.

Based upon the foregoing considerations and facts of this case, I recommend that the per patron amount be set at $50.00, the maximum amount that each patron who was able to view the fight at Las Flores would have paid to view the fight from home, which they might have elected to do if they did not have access to the fight for free at the neighborhood restaurant and bar. On the evening of November 13, 2004, Paul Sulzbach, an independent investigator, visited Las Flores and determined that there were approximately 13 patrons

present. (*See* Piracy Aff.) However, he estimated that the facility could in fact hold thirty patrons at maximum capacity. (*Id.*) It is entirely possible that at some point in the evening the restaurant did indeed hold that maximum number, if not more, as it is debatable whether an establishment that deigns to display illegally pilfered boxing matches to attract additional customers would turn away those very same customers when the facility reached its maximum capacity. Therefore, I recommend that Kingvision Pay–Per–View be awarded $1,500 in statutory damages for the violation.[1]

## 2. Enhanced Damages

■ Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which provides for enhanced damages if the violation was committed willfully and for commercial advantage or private financial gain. Willfulness is defined as "disregard for the governing statute and an indifference for its requirements[,]" *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126–27, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), and is established by the fact that an event is broadcast, without authorization, through a defendant's cable box. *See Googies Luncheonette, Inc.*, 77 F.Supp.2d at 490 ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Section 605(e)(3)(C)(ii) allows for increased damage awards against persons or entities operating commercial establishments that show the unauthorized pro-

gramming to patrons. *See Googies Luncheonette*, 77 F.Supp.2d at 491 (increasing award by $12,000); *Taco Rapido Restaurant*, 988 F.Supp. at 111–12 (increasing award by $5,000).

■ Courts use a variety of factors in determining whether a defendant's willful conduct justifies increased damages. These factors are i) repeated violations over an extended period of time; ii) substantial unlawful monetary gains; iii) advertising of the broadcast; or iv) charging of a cover charge or premiums for food and drinks. *See Kingvision Pay–Per–View Ltd. v. El Rey Del Bistec Y Caridad, Inc.*, No. 01–CV–6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec.12, 2001). Courts also consider a plaintiff's significant actual damages. *Id.*

■ In this case, Kingvision Pay–Per–View seeks the maximum increased award of $100,000, but has offered no evidence that defendants have pirated events other than the Ruiz/Golota fight broadcasted on November 13, 2004, or that defendants advertised the broadcast of the event, or that the restaurant charged a premium on food and drinks. However, defendants' conduct was nonetheless willful by virtue of their illegal interception of plaintiff's broadcast. Consequently, I recommend that the damage award be increased by $10,000 for a willful violation of the statute. This addition reflects plaintiff's estimated damages, defendants' likely commercial gain in selling food and drink to between thirteen and thirty patrons, and the need to deter future theft of service.

1. This sum was derived by the multiplication of the $50.00 price an individual would pay to view the boxing match at home on a pay-per-view channel and the number of patrons Las Flores could have reasonably accommodated at a single time. While it is true that patrons may have come and gone throughout the night, increasing that number of 30 patrons to more with their influx and outflow, plaintiff has provided no additional information other than its investigator's brief observation and it is on that observation that the court bases its estimation. *See Garden City Boxing Club, Inc. v. Bello*, No. CV–05–1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005).

### C. Permanent Injunction

 Plaintiff requests a permanent injunction enjoining defendants from further violations of §§ 553 or 605, pointing to the fact that many business establishments that pirate one event have or will pirate additional broadcasts in the future. A court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Main Events/Monitor Prods. v. Batista,* No. 96–CV–5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug.26, 1998). The first condition is satisfied because injunctions are available remedies pursuant to §§ 553(c)(2)(A) and 605(e)(3)(B)(i). Second, a party seeking a preliminary injunction must demonstrate irreparable harm and the absence of an adequate remedy at law. *See Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 57, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). Plaintiff has failed to satisfy this condition. In this case, there is no evidence that plaintiff will suffer irreparable harm or that the statutory and enhanced damages are insufficient to deter future conduct. I therefore recommend that plaintiff's request for a permanent injunction be denied.

### D. Attorney's Fees and Costs

#### 1. Attorney's Fees

Pursuant to section 605(e)(3)(B)(iii), plaintiff is entitled to reasonable attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii). Under the "lodestar" method, attorney fees are determined by taking "the number of hours reasonably expended on the litigation [multiplied] by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058–59 (2d Cir.1989), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990). Reasonable hourly rates are determined by reference to "the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Cruz v. Local Union No. 3,* 34 F.3d 1148, 1159 (2d Cir.1994). To receive such fees plaintiff must present time records to substantiate its fee request. *See New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983). Such time records must be contemporaneous and indicate "for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1148.

 In the present case, attorney Julie Cohen Lonstein has submitted an affidavit setting forth the total attorney's fees, with an attachment itemizing the work done, hours expended, and the amount due. Ms. Cohen Lonstein performed a total of 5.5 hours in this litigation at a rate of $200 per hour, the time in which she researched and developed the case, drafted the summons and complaint, and prepared the default motions and inquest papers, among other tasks (Dkt No. 8: 11/10/05 Att'y Aff.). Applying that rate, plaintiff is entitled to an award of $1,100 in attorney's fees for 5.5 hours of work and an additional $225.00 for 3 hours of paralegal work. This court finds that the amount of time spent was reasonable in this case and recommends an $1,325.00 award for attorney's fees.

#### 2. Costs

Kingvision Pay–Per–View seeks reimbursement for costs in the amount of $1,000, which includes $250.00 for the court filing fee, $400.00 for the cost of service of process, and $350.00 for investigative costs. "In federal court, the taxable costs for which a party may seek reimbursement

include the cost of deposition and trial transcripts, witness fees and mileage, interpreting costs, and the cost of certain small photographs." *Time Warner Cable of New York City v. Sanchez*, No. 02–CV–5855, 2003 WL 21744089, at * 5 (S.D.N.Y. July 8, 2003); *see* 28 U.S.C. § 1920; Fed. R.Civ.P. 54. "There is no provision, however, for a prevailing party to be awarded the cost of its investigator." *Sanchez*, 2003 WL 21744089, at *5 (denying investigator costs because there is no statute or federal rule awarding such costs and because plaintiff failed to submit in its affidavit the total number of hours spent on the investigation and the hourly investigative rate). However, because in this case Kingvision Pay–Per–View did provide an affidavit and invoice detailing the amount of time spent on the investigation and the rate, this court, in its discretion, will allow for a $100 reimbursement of the investigator's fees. *See Bello*, 2005 WL 2496062, at *6 n. 2.

Based on the foregoing, I recommend that Kingvision Pay–Per–View be awarded $750 in costs,[2] representing filing fees, costs for service of process, and a portion of plaintiff's investigatory expenses.

### III. CONCLUSION

For the above reasons, I respectfully recommend that plaintiff be awarded $1,500.00 in statutory damages, with a $10,000 increase for defendants' willful violation of the statute, and attorney's fees and costs of $2,075.00 for a total damages award of $13,575.00. I respectfully recommend that plaintiff's request for a permanent injunction be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the under-

---

2. This sum includes $250 filing fee, $400 service of process fee, and $100 towards the

signed, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1) (2000); Fed.R.Civ.P. 72, 6(a), 6(e).

SO ORDERED.

Mar. 20, 2006.