**ROLLS–ROYCE PLC and Rolls–Royce Motor Cars Limited, Plaintiffs,**

v.

**ROLLS–ROYCE USA, INC., Defendant.**

No. 09–CV–1381(RRM)(VVP).

United States District Court, E.D. New York.

Feb. 18, 2010.

Sean Christopher Sheely, Holland & Knight LLP, New York, NY, for Plaintiffs.

*ORDER*

MAUSKOPF, District Judge.

By Motion filed May 28, 2009, Plaintiffs moved for default judgment. By Order entered May 29, 2009, this Court referred that motion to the assigned Magistrate Judge, the Honorable *Viktor V. Pohorelsky,* for a Report and Recommendation. On January 27, 2010, Judge Pohorelsky issued a Report and Recommendation (the "R & R") recommending that (1) Plaintiffs' motion be granted; (2) Plaintiff Rolls–Royce plc be awarded damages of $1,000,000; (3) Plaintiff Rolls–Royce Motor Cars Limited be awarded damages of $1,000,000; and that (4) Defendant be permanently enjoined from using Plaintiffs' name and trademarks for commercial purposes. Judge Pohorelsky reminded the parties that, pursuant to Rule 72(b), any objection to the R & R was due February 10, 2010. No party has filed any objection.

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, the Court has reviewed the R & R for clear error and, finding none, concurs with the R & R in its entirety. *See Covey v. Simonton,* 481 F.Supp.2d 224, 226 (E.D.N.Y.2007). Accordingly, it is hereby ORDERED that:

(1) Plaintiffs' motion for default judgment is GRANTED;

(2) Plaintiff Rolls–Royce plc is awarded damages of $1,000,000;

(3) Plaintiff Rolls–Royce Motor Cars Limited is awarded damages of $1,000,000;

(4) Defendant, Rolls–Royce USA, Inc., and its officers, agents, employees, servants, successors and assigns, and all other persons in active concert or participation with them are permanently enjoined from:

a. using the name "Rolls–Royce USA, Inc.," the marks ROLLS–ROYCE USA and RR, or any other

reproduction, copy, or colorable imitation of the Rolls–Royce Marks or any of them, in any manner in connection with the conduct of its business, website or domain name, either alone or in conjunction with other words; and

b. making any other representation or taking any other action that may lead the public to believe that the business being conducted by Defendant under the name Rolls–Royce USA, Inc. is the business of Plaintiffs or of any of their authorized representatives, or is in any way affiliated or connected therewith;

(5) Defendant, Rolls–Royce USA, Inc., and its officers, agents, employees, servants, successors and assigns, and all other persons in active concert or participation with them shall:

a. obliterate, delete and remove the said corporate and business title and the names and marks "Rolls–Royce," and "RR" from its website, business offices, stationery, telephone and other listings, signs, advertising, promotional material and wherever else the same appear and to destroy or to surrender to Plaintiff any and all materials, including, but not limited to all clothing and apparel in their possession or subject to its control wherein the names "ROLLS–ROYCE" and the other Rolls–Royce Marks may appear; and

b. change its corporate name and to cause the cancellation, withdrawal or amendment of all filings, licenses and permits issued by or with federal, state or local governmental authorities or agencies so as to omit the names "Rolls–Royce," and the Rolls–Royce Marks or any of the them, or any reproduction, copy, counterfeit or colorable imitation thereof, from their business or corporate titles.

The Clerk of the Court is directed to close the case.

SO ORDERED.

### REPORT AND RECOMMENDATION

VIKTOR V. POHORELSKY, United States Magistrate Judge.

The Honorable Roslynn R. Mauskopf referred this matter to the undersigned for a report and recommendation as to whether default judgment is appropriate, and if so, as to the amount of damages to be awarded to the plaintiffs Rolls–Royce plc and Rolls–Royce Motor Cars Limited. The plaintiffs have brought this action for trademark infringement and associated claims under the Federal Trademark Act of 1946 (the "Lanham Act" or "the Act"), 15 U.S.C. §§ 1051 *et seq.*, and various New York state statutes.[1] The plaintiffs seek monetary relief as well as an injunction barring future infringement of the plaintiffs' trademarks. On the basis of the plaintiffs' submissions and the prior proceedings in this action, the undersigned

---

1. The complaint asserts numerous other claims including False Designation of Origin, False Description, and Trademark Dilution under the Lanham Act—*see* 15 U.S.C. §§ 1125(a)(c)—as well as trademark dilution and deceptive trade practices under New York statutory law—*see* N.Y. Gen. Bus. Law §§ 349, 360—and unfair competition under New York common law. Complaint ¶¶ 32–53.

However, as the plaintiffs' moving papers only seek recovery and injunctive relief under the Lanham Act for trademark infringement, this report does not address damages under those additional or alternative causes of action. *See* Plaintiffs' Memorandum of Law in Support of Motion for Default Judgment and Permanent Injunction, dated May 28, 2009 [hereafter "Plaintiffs' Mem."], at 3–9.

makes the recommendations below regarding liability and damages.

## I. *Liability*

The plaintiffs commenced this action against Rolls–Royce USA on April 6, 2009. The defendant was properly served with process, but failed to answer or respond to the complaint, or otherwise move or appear in this action. *See* Declaration of Sean C. Sheely in Support of Default Judgment, dated May 28, 2009, ¶ 3; Docket No. 3. The plaintiffs moved for a default judgment, and on May 8, 2009, the Clerk of Court entered a default against Rolls–Royce USA pursuant to Federal Rule of Civil Procedure 55(a). Thereafter, Judge Mauskopf referred the plaintiffs' motion for a default judgment to the undersigned for a report and recommendation, including as to damages, if appropriate.

■ Because of the default, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of damages. *See, e.g., Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981). Even so, "after default ... it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Leider v. Ralfe,* No. 01–CV–3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)

(quoting *In re Indus. Diamonds Antitrust Litig.,* 119 F.Supp.2d 418, 420 (S.D.N.Y. 2000)). Put differently, liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief. *See Au Bon Pain,* 653 F.2d at 65.

The plaintiff, Rolls–Royce Motor Cars, manufactures and markets Rolls–Royce luxury automobiles, as well as associated parts and equipment. Complaint ¶ 6. Rolls–Royce plc, the other plaintiff, manufactures gas turbine engines for use in aircraft and other technologically advanced machinery. Complaint ¶ 5. Since 1907, the plaintiffs collectively (and their predecessors in interest) have used the mark "Rolls–Royce," the Rolls–Royce insignia of two interlocked "R"s [2], and the badge "Rolls–RR–Royce" [3] in carrying on their businesses. Complaint ¶ 8. Rolls–Royce plc owns trademarks with the United States Patent and Trademark Office (hereafter the "PTO") for the use of all three marks for aircraft engines and other products. Complaint ¶ 9, Exhibits A–J. Rolls–Royce Motor Cars also owns trademark registrations for the "Rolls–RR–Royce" badge, the letters "RR" and the mark "Rolls–Royce" for automobiles and other products.[4] Complaint ¶ 10, Exhibits A–J. The registrations for each mark (which have been renewed and remain in force), as well as the registration number and

2.

3.

4. In the complaint, registration of the mark "RR" (Reg. No. 344,372) was incorrectly at-

date of issuance for both plaintiffs, are summarized in the table below. Complaint ¶¶ 9–10, Exhibits A–J.

|  | "Rolls–Royce" | Letters "RR" | "Rolls–RR–Royce" |
|---|---|---|---|
| Rolls–Royce plc | Reg. No. 325,316 June 18, 1935 | Reg. No. 1,068,023 June 21, 1977 | Reg. No. 1,068,022 June 21, 1977 |
|  | Reg. No. 912,848 June 8, 1971 |  | Reg. No. 1,160,411 July 7, 1981 |
|  |  |  | Reg. No. 1,275,757 May 1, 1984 |
| Rolls–Royce Motor Cars Ltd. | Reg. No. 325,195 June 11, 1935 | Reg. No. 344,372 March 23, 1937 | Reg. No. 197,089 April 7, 1925 |

The defendant, Rolls–Royce USA, is a New York corporation unaffiliated with the plaintiffs or with Rolls–Royce in general. Complaint ¶ 7. The defendant's business includes the production, marketing, and sale of clothing, including athletic apparel. Complaint ¶ 7. The defendant produced and sold clothing bearing the name "Rolls–Royce USA" and the mark "RR." Complaint ¶ 16. The plaintiffs never consented to or authorized the defendant's use of their trademarks. Complaint ¶ 22. In July 2008, the defendant applied to the PTO for a registration of the mark "RR Rolls Royce USA"[5] to use in connection with numerous items of clothing.[6] Complaint ¶ 17, Exhibit L. That application

shows that the defendant used the mark it sought to register as early as May 21, 2007, and that it first used it in commerce as early as June 1, 2007. Complaint, Exhibit L. In October 2008, the PTO refused the defendant's application to register the mark "RR Rolls Royce USA," noting that the similarities to the plaintiffs' trademarks for use on similar products would engender consumer confusion. Complaint ¶ 19. Before filing this lawsuit, the plaintiffs repeatedly demanded that the defendant cease and desist from using the plaintiffs' name and trademarks, but the defendant did not comply. Complaint ¶ 27. It is unclear whether the defendant

tributed to Rolls–Royce plc and not to Rolls–Royce Motor Cars, but the error has been corrected in the plaintiffs' moving papers. Rolls–Royce plc owns the same trademark under Register No. 1,068,023. *See* Plaintiffs' Mem. at 5 n. 1.

5. The court has accessed PTO website and its file on the defendant's PTO application, and has retrieved the following image, available at http://tarr.uspto.gov/tarr?regser=serial & entry=77514916. It appears that this image was annexed to the complaint, but the reproductions were too shaded to be of use to the court.

6. These products, identified in the PTO application, include athletic shirts, athletic pants, athletic jackets, athletic footwear, athletic hats, aloha shirts, camp shirts, dress shirts, golf shirts, hooded sweatshirts, knit shirts, long-sleeved shirts, moisture-wicking sport shirts, nightshirts, open-necked shirts, pique shirts, polo shirts, rugby shirts, triathlon clothing (tights, shorts, singlets, shirts, suits),

continues to produce and sell the infringing clothing.

The Lanham Act, broadly speaking, provides the federal courts with subject matter jurisdiction over matters involving violations of patents and trademarks. 15 U.S.C. § 1121. Registration of trademarks give registrants the exclusive and incontestable right (with some exceptions, none of them applicable here) to use of the trademarks for commercial purposes. *See* 15 U.S.C. §§ 1065, 1115. The Lanham Act correspondingly makes it illegal to "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered [trade]mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1)(a). It goes on to create a civil action for an aggrieved registrant.[7] 15 U.S.C. § 1114(1). For relevant purposes herein, a trademark "includes any word, name, symbol, or device, or any combination thereof used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others[.]" 15 U.S.C. § 1127. A trademark is a "registered mark" for purposes of the Lanham Act if it has been "registered in the United States Patent and Trademark Office under this chapter ..." 15 U.S.C. § 1127.

Determining the defendant's liability is fairly straightforward in this case. The allegations in the complaint as well as the documentation attached to it in the form of exhibits establish that the plaintiffs had registered their trademarks with the PTO. *See* Complaint ¶¶ 9–10, Exhibits A–J. Without the plaintiffs' authorization, the defendant reproduced, copied, counterfeited or imitated the plaintiffs' trademarks in connection with the sale of its clothing products. Complaint ¶ 16. Use of the plaintiffs' trademarks was likely to cause confusion or mistake on the part of consumers by (falsely) linking the defendant's products to the good will and reputation that the plaintiffs' trademarks signify and that the Rolls–Royce brand enjoys. Under these circumstances, the complaint establishes liability for trademark infringement under the Lanham Act. *See* 15 U.S.C. § 1114(1)(a). There being a valid basis for liability, the court proceeds to consider the amount of damages to be awarded.

## II. *Damages*

Federal Rule 55(b) requires the court to make an independent assessment of damages when deciding a motion for default judgment. *See Securities & Exch. Comm'n v. Management Dyn., Inc.*, 515 F.2d 801, 814 (2d Cir.1975). Damages are proven through an evidentiary hearing, or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages to be awarded. *See Greyhound*, 973 F.2d at

---

and yoga shirts. Electronically, the PTO application annexed to the complaint does not appear to be marked as "Exhibit L". Nevertheless, because of its positioning relative to other documents (following marked Exhibits A–J and unmarked Exhibit K) and to the plaintiffs' reference to it as Exhibit L, the court will refer to it as Exhibit L.

7. The Act also makes it illegal to "reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services, on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive[.]" 15 U.S.C. § 1114(1)(b).

158; *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997). Having provided notice to the defaulting defendant, the court is able to receive affidavits in lieu of holding an evidentiary hearing on damages. *See, e.g., Transatlantic Marine,* 109 F.3d 105, 111 ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.'") (quoting *Fustok v. ContiCommodity Services Inc.,* 873 F.2d 38, 40 (2d Cir.1989)). Here, the plaintiffs have elected not to provide affidavits or hold a hearing, but instead rely on the complaint, the documents attached thereto, and their moving papers. There being no objection by any party to that procedure, and in the absence of any submissions by the defendant, the court concludes that the plaintiffs' submissions provide for a damages award as set forth below.

### A. Monetary Damages

■ When the Lanham Act has been violated, the Act provides for actual damages, consisting of the defendant's profits, "any damages sustained by the plaintiff," and court costs. *See* 15 U.S.C. § 1117(a). That section also authorizes the court to treble actual damages. *See id.* Recovery of this nature often proves unwieldy or impractical to determine, especially in the case of a default. *See Tiffany Inc. v. Luban,* 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003) (quoting S.Rep. No. 104–177, at 10 (1995)); *Sara Lee Corp. v. Bags of New York, Inc.,* 36 F.Supp.2d 161, 165 (S.D.N.Y.1999); *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.,* 866 F.Supp. 780, 782 (S.D.N.Y.1994); *Van Der Zee v.*

*Greenidge,* No. 03–CV–8659, 2006 WL 44020, at *1 (S.D.N.Y. Jan. 6, 2006); *Granada Sales Corp. v. Aumer,* No. 02–CV–6682, 2003 WL 21383821, at *2 (S.D.N.Y. June 2, 2003). Moreover, actual damages may in certain cases be quite paltry and may not reflect the seriousness of the violation nor the need to deter such conduct in the future. *See Guess?, Inc. v. Gold Center Jewelry,* 997 F.Supp. 409, 411 (S.D.N.Y.1998), *rev'd sub nom on other grounds,* 158 F.3d 631 (2d Cir.1998); *Rodgers v. Anderson,* No. 04–CV–1149, 2005 WL 950021, at *2 (S.D.N.Y. Apr. 26, 2005). Therefore, in lieu of actual damages, the Lanham Act also allows plaintiffs to recover statutory damages:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).[8] The court is provided with little statutory guidance in de-

---

**8.** The maximum limits of $200,000 and $2,000,000 were recently increased from $100,000 and $1,000,000 respectively. While

the majority of the infringing activity appears to have taken place while the older limits were still applicable, the facts do not establish

termining statutory damages under the Lanham Act, and is thus vested with considerably broad discretion. *See Sara Lee,* 36 F.Supp.2d at 165–66; *Guess?,* 997 F.Supp. at 411; *see also Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1116 (2d Cir.1986) (discussing statutory damages under analogous Copyright Act). But while it may exceed actual damages, an award of statutory damages does not constitute a windfall for prevailing plaintiffs. *See Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 677 F.Supp. 740, 769 (S.D.N.Y.1988). It does, however, serve a punitive, deterrent function. *Malletier v. Carducci Leather Fashions, Inc.,* 648 F.Supp.2d 501, 504 (S.D.N.Y.2009).

The plaintiffs have made such an election as countenanced by the Lanham Act, and they seek statutory damages in the amount of $8,000,000. This figure was computed, in accordance with Section 1117(c), by multiplying $100,000 by four different marks by 20 different types of goods. The complaint yields strong evidence that the infringements herein were willful. Indeed, it would be difficult for the court to conclude that the infringements were anything but willful. The production and sale of clothing bearing the Rolls–Royce marks clearly evinces a scheme to trade off the reputation and good will that the plaintiffs and their predecessors have established. *See* Complaint ¶¶ 16, 23–24. The defendant's PTO application to register the Rolls–Royce marks and the PTO's action in refusing the registration because of the plaintiffs' trademarks is further evidence that the infringements were willful. *See* Complaint ¶¶ 17–19. The defendant was also warned prior to the commencement of this action that it was infringing the plaintiffs' trade-

marks, but it continued to do so. *See* Complaint ¶ 27. In addition, many courts in this circuit have considered a default as evidence of willfulness for the purposes of determining statutory damages. *See Luban,* 282 F.Supp.2d at 124; *Chloe v. Zarafshan,* No. 06–CV–3140, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009); *AW Indus., Inc. v. Sleep Well Mattress, Inc.,* No. 07–CV–3969, 2009 WL 485186, at *4 (E.D.N.Y. Feb. 26, 2009); *Gucci America, Inc. v. MyReplicaHandbag.com,* No. 07–CV–2438, 2008 WL 512789, at *3 (S.D.N.Y. Feb. 26, 2008); *Malletier v. Whenu.Com, Inc.,* No. 05–CV–1325, 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007). Lastly, at least judging from defendant's corporate name, it appears it was formed and did business for the express purpose of infringing the plaintiffs' trademarks, without even the pretense of legitimacy. The brazenness of the defendant's infringement is almost impressive had it not been so patently illegal. These considerations strongly evidence willfulness, and consistent with the compensatory and punitive function of statutory damages—*see Carducci Leather,* 648 F.Supp.2d at 504—warrant an award of significant statutory damages.

At the same time, however, there is scant evidence in the complaint of how extensive or widespread the infringement actually was. Nothing indicates whether the defendant sold 1 or 10,000,000 units of the Rolls–Royce marked apparel. Thus, while the plaintiffs' request of $100,000 per mark per type of good might be reasonable and in line with other cases, the absence of evidence showing the extent of the defendants' sales of the infringing goods deprives the court of a sound basis in fact for awarding $100,000 per infringe-

---

whether the defendants continued to infringe the plaintiffs' trademarks after October 13, 2008, when the new limits took effect. *See Burberry Ltd. v. Euro Moda, Inc.,* No. 08–CV– 5781, 2009 WL 4432678, at *2 n. 2 (S.D.N.Y. Dec. 4, 2009). The distinction is not material, however, as maximum statutory damages should not be awarded. *See infra.*

ment. *See Burberry*, 2009 WL 4432678, at *5 ("Most judges have issued awards far below the statutory maximum, particularly where the plaintiff does not have concrete information about the defendant's actual sales figures and profits.[ ]"); *Pitbull Productions, Inc. v. Universal Netmedia, Inc.*, No. 07–CV–1784, 2007 WL 3287368, at *2–3 (S.D.N.Y. Nov. 7, 2007). To be clear, the court is *not* conflating statutory damages with actual damages, but evidence showing the extent of the defendant's sales can nevertheless inform the determination of statutory, as well as actual damages. *See, e.g., Burberry*, 2009 WL 4432678, at *4–5; *Pitbull Productions*, 2007 WL 3287368, at *2–3.

The plaintiffs rely on *Nike, Inc. v. Top Brand Co.*, in which Judge Ellis specifically found that the "size of the defendants' infringing operations, which led to the production of millions of infringing goods produced, the willfulness of their conduct, and their behavior in this litigation all weigh towards of grant of the maximum in statutory damages." No. 00–CV–8179, 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006). Unlike in that case, the plaintiffs have proffered no evidence on the sales or production volume of the infringing goods. In addition, the defendant has defaulted and has not exhibited any behavior whatsoever in these proceedings, whereas the defendants and their attorneys in *Nike* had both been sanctioned for the way in which they conducted that litigation. *See Nike*, 2006 WL 2946472, at *2.

In many of the cases cited, the plaintiffs and defendants were selling primarily the same type of goods or products. For example, Gucci sold handbags and the defendants in that case sold, among other things, counterfeit Gucci handbags. *See Gucci*, 2008 WL 512789, at *1–3. Similarly, Nike sold athletic wear, and the defendants in the *Nike* case produced and sold counterfeit Nike athletic wear. *See Nike*, 2006 WL 2946472, at *1–3. Here, the plaintiffs' businesses involve, at heart, the manufacture and sale of turbine engines and automobiles. Complaint ¶¶ 5–6. The defendant manufactures clothing. Complaint ¶ 7. Nothing indicates how much of the plaintiffs' business was devoted to the sale of clothing, but it is surely not a significant amount relative to its primary source of revenue and renown. That the parties are not direct competitors in the same market should counsel towards a smaller award. A defendant computer-manufacturer who makes and sells counterfeit Apple brand computers, for example, should suffer a more extensive damages award than a defendant who makes and sells counterfeit Apple brand pens. As explained more fully below, because of the many different types of goods produced by this defendant, the adoption of a baseline amount of $25,000 per infringement yields a damage award that is more than adequate given these facts. *See Gucci*, 2008 WL 512789, at *5 (citing cases and observing that "most judges have issued awards well below the maximums available on the basis of per-mark-per-type-of-goods."); *Whenu.Com*, 2007 WL 257717, at *6.

Secondly, the court accepts the plaintiffs' calculation of four marks. The plaintiffs both seek recovery for use of the marks "Rolls–Royce" and "RR," but not "Rolls–RR–Royce," for a total of four marks. While it is true that two of those marks are essentially identical, it is equally true that different entities obtained different (that is, separately registered) trademarks. In such circumstances, it is sensible to adopt the plaintiffs' proposal that a total of four different marks were infringed for the purposes of calculating statutory damages. *See* Plaintiffs' Mem. at 5–6.

Thirdly, the court must determine the number of different types of infringing goods. The plaintiffs assert for damages purposes that the defendant used the Rolls–Royce trademarks on at least 20 different categories of products, most of them different kinds of shirts. *See* Plaintiffs' Mem. at 5–6; Complaint, Exhibit L. In *Gucci*, Judge Eaton expressed the view that "separate 'types' should be based on the functional purpose of the product." 2008 WL 512789, at *4. On the basis of that rationale, 20 different product categories seems rather cumulative. Of the 20, the majority are different kinds of shirts, and shirts serve a limited number of functional purposes. At some point, a shirt (as an article of clothing covering the torso and maybe the arms) is a shirt is a shirt, in spite of the endless variety in which shirts come. But despite the overlap among the 20 categories that could easily be consolidated, the defendant's own registration application to the PTO demonstrates that each type of good was identified differently, treated separately, and thus distinguished one from the other by the defendant. *See* Complaint, Exhibit L; *supra* note 6. For that reason, 20 is the proper number for the court to adopt reflecting the different types of goods.

Therefore, the court recommends that each plaintiff be awarded $1,000,000 in statutory damages, which reflects $25,000 × 2 marks × 20 types of goods or product categories for each plaintiff. *See* 15 U.S.C. § 1117(c). While the total amount of damages thus awarded—2,000,000—is only one-fourth of what the plaintiffs seek, it more than compensates them for the harm suffered, and should serve as a strong deterrent to future infringements by this and other offenders. Anything greater than that would approach the "windfall" that courts have cautioned against awarding. *See Dae Rim*, 677 F.Supp. at 769; *Century 21 Real Estate LLC v. Bercosa*

*Corp.*, 666 F.Supp.2d 274, 293–94 (E.D.N.Y.2009); *Chanel, Inc. v. Doubinine*, No. 04–CV–4099, 2008 WL 4449631, at *5 (E.D.N.Y. Oct. 2, 2008).

### B. Injunctive Relief

The plaintiffs are also seeking a permanent injunction against Rolls–Royce USA barring them from using the Rolls–Royce marks. To be granted an injunction, the movant must show that it is entitled to injunctive relief under the applicable statutes and that it meets the prerequisites for the issuance of an injunction. *See Kingvision Pay–Per–View, Ltd. v. Lalaleo*, 429 F.Supp.2d 506, 507 (E.D.N.Y.2006). The former consideration is met because the Lanham Act vests the court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant ...." 15 U.S.C. § 1116. The latter consideration entails showing actual success on the merits of the underlying claim as well as irreparable injury or harm. *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 290 (S.D.N.Y.2003). Actual success on the merits is shown by virtue of the defendant's default. *See Pitbull Productions*, 2007 WL 3287368, at *6; *Dunkin' Donuts, Inc. v. Peter Romanofsky, Inc.*, No. 05–CV–3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006). In a trademark case, irreparable injury is established where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir.1987) (internal quotation marks and citations omitted); *see also Malletier v. Burlington Coat Factory*

*Warehouse Corp.,* 426 F.3d 532, 537 (2d Cir.2005). The court agrees with the PTO that there is a strong likelihood that consumers would be misled or confused by the defendant's marketing of clothing bearing the Rolls–Royce marks. It seems that the whole point was to mislead consumers into thinking they were purchasing Rolls–Royce licensed or affiliated apparel.

Therefore, the plaintiffs have satisfied the requirements for a permanent injunction in their favor. While the court is unsure whether the defendant is an entity still in existence, much less doing business and continuing to infringe the plaintiffs' trademarks, it is appropriate to enjoin such conduct in the future by granting the plaintiffs this form of relief. Accordingly, the defendants should be permanently enjoined from using the name "Rolls–Royce USA, Inc.," and the Rolls–Royce marks, insignia, or badge ("Rolls–Royce," "RR," and "Rolls–RR–Royce") in any manner in connection with the conduct of its business and the sale of its products, including on its website or domain name. The court should order the permanent injunction in substantially the form the plaintiffs have sought in their moving papers. *See* Plaintiffs' Mem. at 8.

### CONCLUSION

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that a default judgment be entered against the defendant Rolls–Royce USA, Inc., awarding the plaintiffs $2,000,000 in damages—$1,000,000 for each plaintiff—and permanently enjoining the defendant from using the Rolls–Royce name and trademarks for commercial purposes.

\* \* \* \* \* \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *see, e.g., Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.1992); *Small v. Secretary of Health and Human Serv.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

**Counsel for the plaintiffs shall serve a copy of this Report and Recommendation on the defendants by regular mail and file proof of such service in the record.**

Date: Brooklyn, New York.

January 27, 2010.